228 P.3d 282

Marion EVERSON, James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble, Sarah Preble, Appellants–Appellees,

v.

STATE of Hawai'i, Appellee–Appellant,

and

Board of Trustees of the Hawaii Employer–Union Health Benefits Trust Fund, Appellee–Cross–Appellant

and

The Administrator of the Hawaii Employer–Union Health Benefits Trust Fund, Appellee–Appellee.

No. 29359.

Supreme Court of Hawai'i.

March 25, 2010.

Mark J. Bennet, Attorney General, (Dorothy Sellers, Solicitor General, and Rebecca A. Copeland, Deputy Solicitor General, with him on the briefs), for Appellee Appellant State of Hawai'i and Appellee–Cross–Appellant Board of Trustees of the Hawaii Employer–Union Health Benefits Trust Fund.

Paul Alston (Eric G. Ferrer and Maren L. Calvert with him on the brief) of Alston Hunt Floyd & Ing and Charles K.Y. Khim, Honolulu, for Appellants–Appellees Marion Everson, James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble and Sarah Preble.

MOON, C.J., NAKAYAMA and DUFFY, JJ., Circuit Judge KIM, in Place of RECKTENWALD, J., Recused, and ACOBA, J., Concurring Separately.

1. The Honorable Eden Elizabeth Hifo presided.

2. Article XVI, section 2 of the Hawai'i Constitution, which is also known as the "non-impairment clause," provides: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired."

Opinion of the Court by NAKAYAMA, J.

Appellee–Appellant, State of Hawai'i ("the State"), and Appellee–Cross–Appellant, Board of Trustees of the Hawai'i Employer–Union Health Benefits Trust Fund ("the Board of the EUTF") (collectively, "Appellants"), appeal from the Circuit Court of the First Circuit's [1] ("circuit court's") August 18, 2008 final judgment in favor of Appellants–Appellees Marion Everson, James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble, and Sarah Preble (collectively, "Appellees"). On appeal, Appellants assert that the circuit court erred by concluding that (1) health benefit plans available to retired public employees from the Hawai'i Employer–Union Health Benefits Trust Fund ("the EUTF") are constitutionally protected by article XVI, section 2 of the Hawai'i Constitution,[2] and (2) Hawai'i Revised Statutes (HRS) Chapter 87A requires the EUTF to provide retirees with the same or similar health benefit plans as it provides to active employees. For the following reasons, we hold: (1) the circuit court did not err in concluding that a retired state and county government employee's health benefits are protected by article XVI, section 2 of the Hawai'i Constitution as "accrued benefits" arising from a retiree's membership in the employees' retirement system; and (2) the circuit court erred by concluding that HRS Chapter 87A requires that retiree health benefits reasonably approximate those of active workers. Accordingly, we affirm in part and reverse in part the circuit court's August 18, 2008 final judgment.

## I. BACKGROUND

Appellees are a group of retired state and county government employees. On June 30, 2006, Appellees filed a complaint in the circuit court [3] on behalf of themselves and others alleging that Appellants had failed to

3. The Honorable Bert I. Ayabe presided over this portion of the circuit court proceedings. The Honorable Eden Elizabeth Hifo presided over the direct appeal from the administrative proceedings.

provide health care benefits to them as required by law ("the Class Action").

On August 9, 2006, Appellants filed a motion to dismiss that asserted that primary jurisdiction over Appellees' claims resided with the Board of the EUTF. A hearing on Appellants' motion was held on December 15, 2006. Apparently, the circuit court orally granted Appellants' motion at this hearing by concluding that primary jurisdiction over Appellees' claims resided with the Board of the EUTF. As a result, the circuit court stayed the Class Action pending the outcome of the proceedings before the Board of the EUTF.

On May 15, 2007, Appellees filed a petition for declaratory relief with the Board of the EUTF requesting that it decide two questions, as follows:

A. Is the EUTF permitted, notwithstanding Article XVI, Section 2 of the Hawaii Constitution and the requirements of HRS Chapter 87A, to provide health care benefits to State and County retirees and their dependents which are inferior to the health care benefits provided to active State and County workers and their dependants?

B. If your answer to question A is "yes," what is the minimal array of the health care benefits that must be provided to retirees and their beneficiaries?

On June 15, 2007, Appellees amended their petition to include two additional questions, as follows:

C. Did the EUTF health benefits plans in effect from July 1, 2003 to the present comply with the requirements of the Hawai'i Constitution and HRS Chapter 87A?

D. If your answer to Question C is "no," are retirees and/or their dependents entitled to either monetary compensation/damages or any other form of relief (legal or equitable)? If so, how is it to be calculated and for what period of time?

On September 7, 2007, the Board of the EUTF issued its Findings of Fact, Conclusions of Law and Order.[4] Therein it concluded that (1) HRS Chapter 87A "permits the EUTF to provide health benefits to State and County retirees and their dependents that are different from and/or inferior to those provided to State and County active employees and their dependents," and (2) the EUTF health benefits plan satisfies HRS Chapter 87A's statutory requirements. However, the Board of the EUTF declined to answer any question that required an interpretation of the Hawai'i Constitution because it concluded that it lacked jurisdiction to do so.

On October 5, 2007, Appellees filed a timely notice of appeal to the circuit court.

On July 23, 2008, the circuit court filed its Decision and Order. Therein the circuit court reversed the Board of the EUTF's decision for the following reasons: (1) the non-impairment clause of the Hawai'i Constitution "protects ... accrued benefits," which includes "those health benefits that became established by enactment of [HRS] Chapters 87 and 87A and amendments thereto," "but by so doing does not and has not prohibited the State legislature from changing the benefits for prospective employees"; (2) HRS § 87A–23 (Supp.2006)[5] requires that the

---

4. During the proceedings, the State and James Williams, as the Administrator of the EUTF, intervened.

5. HRS § 87A–23, which is entitled "Health benefits plan supplemental to medicare," provides in its entirety:

(1) There shall be no duplication of benefits payable under medicare. The plan under this section, which shall be secondary to medicare, when combined with medicare and any other plan to which the health benefits plan is subordinate under the National Association of Insurance Commissioners' coordination of benefit rules, *shall provide benefits that approximate those provided to a similarly situated beneficiary not eligible for medicare;*

(2) The State, through the department of budget and finance, and the counties, through their respective departments of finance shall pay to the fund a contribution equal to an amount not less than the medicare part B premium, for each of the following who are enrolled in the medicare part B medical insurance plan: (A) an employee-beneficiary who is a retired employee, (B) an employee-beneficiary's spouse while the employee-beneficiary is living, and (C) an employee-beneficiary's spouse, after the death of the employee-beneficiary, if the spouse qualifies as an employee-beneficiary. For purposes of this section, a "retired employee" means retired members of the employees' retirement system; county pension system; or a police, firefighters, or bands-

words "similarly situated beneficiary" to "invoke [ ] comparison between retirees and active employees, not Medicare eligible retirees and early retirees who by age do not yet qualify for Medicare[,]" and health benefits that are provided to retirees must "reasonably approximate" those benefits provided to active employees; and (3) some of the retiree's health benefits included in the plan did not "reasonably approximate" those benefits provided to active employees.[6]

On August 18, 2008, the circuit court filed its final judgment. On September 15, 2008, Appellants timely filed their notices of appeal.

On May 21, 2009, Appellants filed an application to transfer its appeal from the Intermediate Court of Appeals to this court. On June 10, 2009, this court granted Appellants' application for transfer.

## II. STANDARDS OF REVIEW

### A. Secondary Administrative Appeal

 "On secondary judicial review of an administrative decision, Hawai['] i appellate courts apply the same standard of review as that applied upon primary review by the circuit court." *Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations,* 70 Haw. 72, 80, 762 P.2d 796, 800–01 (1988). For administrative appeals, the applicable standard of review is set forth in Hawai'i

Revised Statutes ("HRS") § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). Pursuant to HRS § 91–14(g)(5), administrative findings of fact are reviewed under the clearly erroneous standard, which requires this court to sustain its findings "unless the court is left with a firm and definite conviction that a mistake has been made." *Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (block format and citation omitted). Administrative conclusions of law, how-

---

men pension system of the State or a county as set forth in chapter 88. If the amount reimbursed by the fund under this section is less than the actual cost of the medicare part B medical insurance plan due to an increase in the medicare part B medical insurance plan rate, the fund shall reimburse each employee-beneficiary and employee-beneficiary for the cost increase within thirty days of the rate change. Each employee-beneficiary and employee-beneficiary's spouse who becomes entitled to reimbursement from the fund for medicare part B premiums after July 1, 2006, shall designate a financial institution account into which the fund shall be authorized to deposit reimbursements. This method of payment may be waived by the fund if another method is determined to be more appropriate.

(3) The benefits available under this plan, when combined with benefits available under medicare or any other coverage or plan to which this plan is subordinate under the National Association of Insurance Commissioners' coordination of benefit rules, *shall approx-*

*imate the benefits that would be provided to a similarly situated employee-beneficiary not eligible for medicare;*

(4) All employee-beneficiaries or dependent-beneficiaries who are eligible to enroll in the medicare part B medical insurance plan shall enroll in that plan as a condition of receiving contributions and participating in benefits plans under this chapter. This paragraph shall apply to retired employees, their spouses, and the surviving spouses of deceased retirees and employees killed in the performance of duty; and

(5) The board shall determine which of the employee-beneficiaries and dependent-beneficiaries, who are not enrolled in the medicare part B medical insurance plan, may participate in the plans offered by the fund.

(Emphases added.)

**6.** The circuit court also concluded that the Board of the EUTF erred in allowing the Administrator of the EUTF to intervene in the proceedings.

ever, are reviewed under the *de novo* standard inasmuch as they are "not binding on an appellate court." *Id.* (block format and citation omitted). "Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." *Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). "To be granted deference, however, the agency's decision must be consistent with the legislative purpose." *Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

### B. Statutory Interpretation

 "Questions of statutory interpretation are questions of law reviewable *de novo.*" *Gump v. Wal–Mart Stores, Inc.,* 93 Hawai'i 417, 420, 5 P.3d 407, 410 (2000). In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Awakuni v. Awana,* 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007) (citation omitted).

### C. Constitutional Law

 "[T]his court reviews questions of constitutional law *de novo,* under the right/ wrong standard." *Jou v. Dai–Tokyo Royal State Ins. Co.,* 116 Hawai'i 159, 164–65, 172

P.3d 471, 476–77 (2007) (quoting *Onaka v. Onaka,* 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006)) (internal quotation marks omitted).

## III. DISCUSSION

### A. Health Benefits included In a Health Benefits Plan For Retirees Constitute an Accrued Benefit Arising From a Person's Membership In an Employees' Retirement System Of the State Or Any Political Subdivision Thereof.

Based on certain authorities described below, Appellants essentially assert that the non-impairment clause of the Hawai'i Constitution protects pension and other retirement allowances only, and does not protect health benefit plans. Appellees assert that the circuit court properly concluded that the non-impairment clause applies to retirees' health benefits included in a health benefits plan because these benefits constitute "accrued benefits" under the language of the constitutional provision.

 In interpreting constitutional provisions, "[t]he general rule is that, if the words used in a constitutional provision ... are clear and unambiguous, they are to be construed as written." *Watland v. Lingle,* 104 Hawai'i 128, 139, 85 P.3d 1079, 1090 (2004) (internal quotation marks and citation omitted) (brackets and ellipsis in original). In this regard, "the words are presumed to be used in their natural sense unless the context furnishes some ground to control, qualify, or enlarge them." *Id.* (internal quotation marks and citation omitted). However, "[w]hen resolving an ambiguity, we have repeatedly held 'that the fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it.'" *Pray v. Judicial Selection Comm'n of the State of Hawai'i,* 75 Haw. 333, 343, 861 P.2d 723, 728 (1993) (citation omitted, brackets added). "[I]n gleaning the intent of the framers and the people, ... 'an examination of the debates, proceedings and committee reports [of the Constitutional Convention] is useful.' Such evidence, however, 'do[es] not have binding force on this court and its persuasive value depends on the circumstances of each

case.'" *Id.* (citation omitted, ellipsis added, some brackets added and in original).

"Another established rule of construction is that a court may look to the object sought to be accomplished and the evils sought to be remedied by the [constitutional] amendment, along with the history of the times and the state of being when the constitutional provision was adopted." *State v. Kahlbaun,* 64 Haw. 197, 202, 638 P.2d 309, 315 (1981) (brackets added). Additionally, "we can also look to the understanding of the voters who adopted the constitutional provision, . . . and the legislative implementation of the constitutional amendment." *Id.* (ellipsis added).

To reiterate, article XVI, section 2 of the Hawai'i Constitution provides: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired." None of the parties dispute that Appellees are members of an "employees' retirement system of the State or any political subdivision thereof" ("ERS"). *See id.* The issue here, then, is whether health benefits for retirees that are included in a health benefits plan constitute an "accrued benefit [ ]" that arises from that retirees' "[m]embership" in an ERS. *See id.*

Appellants assert that health benefits for retirees do not arise from a person's membership in an ERS in light of (1) the statutory framework and history of the ERS, (2) the intent of the framers of Hawaii's non-impairment clause, and (3) the New York case of *Lippman v. Board of Education,* 66 N.Y.2d 313, 496 N.Y.S.2d 987, 487 N.E.2d 897 (1985), Appellants also assert that, essentially, health benefits for retirees do not constitute "accrued benefits" because, unlike pension and retirement allowances, health benefits neither accumulate nor accrue.

### 1. *Pertinent statutory history of the ERS*

Since 1925, the ERS has been enacted in some form in Hawai'i. *See* 1925 Haw. Sess. L. Act 55, § 1–14 at 51–70. At the time the non-impairment clause was ratified, the ERS was known as the "Employees' Retirement System of the Territory of Hawaii" ("the Territorial ERS"). Revised Laws of Hawai'i ("RLH") § 6–21 (1955). Its purpose was to provide "retirement allowances for employees." *Id.* A "retirement allowance" was defined as "the sum of the annuity and the pension or any benefits in lieu thereof granted to a member upon retirement." RLH § 6–20 (1955).

Comparatively, the purpose of the ERS today is to "provid[e] retirement allowances and other benefits for employees." HRS § 88–22 (1993). However, a "retirement allowance" is now defined as "the benefit payable for life as originally computed and paid a member at the point of the member's retirement in accordance with the retirement allowance option selected by the member, exclusive of any bonus or bonuses." HRS § 88–21 (Supp.2008). A "pension" is defined as a "benefit payment for life derived from money provided by the State or county, as the case may be." *Id.*

### 2. *Hawaii's non-impairment clause*

The intent of the framers of article XVI, section 2 of the Hawai'i Constitution was described by this court in *Kaho'Ohanohano v. State,* 114 Hawai'i 302, 162 P.3d 696 (2007). Therein this court observed that "the proceedings of the 1950 Constitutional Convention demonstrate that article XVI, section 2 was introduced to ensure that the State and local governments would provide a sound retirement system for their employees, largely because of the Territory's past lapses in funding such benefits." *Id.* at 339–40, 162 P.3d at 733–34. In this regard, this court observed further that, "[i]n the delegates' view, an ERS member's constitutional right under article XVI, section 2 that the accrued benefits shall not be diminished or impaired is inextricably tied to protecting the source of such benefits." *Id.* at 341, 162 P.3d at 735 (brackets added). In other words, the "ERS funds must be secure in order to ensure that the ERS will be able to fulfill its obligations to its members into the future." *Id.* at 342, 162 P.3d at 736. In light of some of the delegates' concerns regarding adequate funding for the retirement benefits of future employees, this court observed that the intent of

the non-impairment clause "was in part to provide the legislature with the flexibility to 'reduce benefits as to ... persons already in the system [insofar] as their future services were concerned,' but '[i]t could not, however, reduce the benefits attributable to past services.'" *Id.* (quoting Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330 (1960)) (some brackets added and in original, emphasis omitted). Accordingly, this court held that it would be "inconsistent with the delegates' statements and the Committee of the Whole report to conclude that the delegates intended to afford legislative flexibility to the extent that the legislature could ultimately *diminish or impair the benefits already accrued and contractually guaranteed.*" *Id.* (emphasis in original).

Elaborating further, during the proceedings of the 1950 Constitutional Convention, Delegate Trask stated, "I believe that the government employees are entitled to a constitutional protection of a system that has gone a long way in contributing to the welfare of our community." *Id.* at 340, 162 P.3d at 734 (quoting 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 493 (1961)) (emphasis and internal quotation marks omitted).

Delegate Ohrt stated:

I was interested in Proposal 129 which I think is the type of proposal that this Convention should adopt. The retirement system really gives protection to some 16,-000 employees and fixes the benefits through a trust fund. That is, *the retirement system has been set up as a trust fund,* and as I understand it, *there is a statutory contractual relationship at the present time, and I think the employees would like to see it as a constitutional contractual relationship.*

*Id.* (quoting 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 493) (emphases in original).

During the debates, the prevailing view among the delegates was that the "constitutional provision was needed in large part to ensure that the Hawai'i legislature continued to meet its funding obligation." *Id.* By protecting government employees in this manner, Delegate Sakakihara "very strongly" felt that "the government should in good faith keep their obligation with the employees of the territory." *Id.* at 341, 162 P.3d at 735 (citation and block format omitted).

In explaining his position, Delegate Sakakihara characterized "the retirement system" as "a sacred trust by the government of funds entrusted by the employees of this Territory and the counties." *Id.* at 340, 162 P.3d at 734 (citation and block format omitted). Indeed, Delegate Sakakihara recalled a period of time past "when the legislature of the Territory of Hawai'i absolutely defaulted on their share of the contribution towards this obligation" to maintain and fund the retirement system. *Id.* (citation and block format omitted). Delegate Sakakihara continued:

[T]he employees of the county, City and County and the Territory today are by law required to become members of the retirement system as long as they are employed by the government. *They have no choice.* They have no alternative but to become a member of the retirement system. *I feel very strongly that there should be a contractual relationship, there should be between the government, if the government desires to maintain this system in good faith with the employees of the government.*

*Id.* (citation omitted, brackets added, and emphases in original).

However, Delegate Tavares "expressed concern that the provision may have meant that 'the legislature guarantees that no employee in the future will ever be given less benefits proportionately than the employees today....'" *Id.* (citation omitted). "In response, Delegate Ohrt explained that the 'benefits of which shall not be diminished or impaired,' applied to the benefits of 'all those that are now members of the system.'" *Id.* (citation omitted). Delegate Ohrt "clarified that the existing members of the system 'have made their contributions and the benefits are a fixed benefit plan. And it's just such a reduction or the impairment of those benefits that the employees should be concerned with.'" *Id.* (citation omitted).

By adding the word "accrued" before "benefits," this court observed that "the delegates only sought to indicate that there 'can be no impairment of past benefits, but that [the] future benefits can be changed by the legislature[.]'" *Id.* (citation omitted, brackets in original). As this court explained:

This is because[,] as noted before, Delegate Tavares had expressed concern that the amendment would require the ERS to be continued perpetually. [2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 497.] Likewise, Delegate White was concerned that the amendment did not draw a clear distinction between past benefits and future benefits. *Id.* at 497–98. To alleviate this uncertainty and clearly differentiate between past and future benefits, Delegate Anthony "suggest[ed] that the word 'accrued' be inserted before the word 'benefits.'" *Id.* at 498, Delegate Anthony explained, "I was trying to get rid of the impasse and I think the insertion of the word 'accrued' will do it." *Id.*

After the Chairman accepted the addition of "accrued," Delegate Anthony stated, "The purpose of the amendment will be to *preserve the accrued benefits but still leave the legislature free as to the future.* In other words, the fear that Delegate White and Delegate Tavares had, I think, are met by this insertion." *Id.* at 499 (emphasis added). Delegate Tavares confirmed that the addition of "accrued" satisfied his initial concerns. *Id.* Delegate White did not object. *Id.*

Delegate Tavares further stated that the final version of the amendment agreed with Delegate Mau's interpretation of the amendment which was made prior to the addition of the term "accrued." *Id.* Delegate Mau's interpretation was that "the State can [at] any time cut out [the] retirement system, *but those who belong to the system before it is terminated, their rights and the benefits accrued to them still remain under this provision.*" *Id.* at 498 (emphasis added). The Committee of the Whole incorporated this objective in its report stating,

It should be noted that *the above provision would not limit the legislature in effecting a reduction in the benefits of a retirement system providing the reduction did not apply to benefits already accrued.* In other words, *the legislature could reduce benefits* as to (1) new entrants into a retirement system, or (2) *as to persons already in the system in [ ] so [ ] far as their future services were concerned. It could not, however, reduce the benefits attributable to past services.* Further, the section would not limit the legislature in making general changes [to the] system, applicable to past members, so long as the changes did not necessarily reduce the benefits attributable to past services.

[Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330] (emphases added).

*Id.* at 343–44, 162 P.3d at 737–38 (brackets added and in original).

"[I]n order to achieve the goal of protecting the integrity of the ERS system, the delegates to the 1950 Constitutional Convention clearly manifested the intent to adopt and follow the then New York system." *Id.* at 342, 162 P.3d at 736 (brackets added). Similar to Hawaii's non-impairment clause, New York's version states: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." *Id.* at 343, 162 P.2d at 737 (quoting N.Y. Const. art. V, § 7) (internal quotation marks and emphasis omitted). Because the delegates clearly intended to follow the "then New York system," this court found New York case law interpreting its own constitutional provision persuasive in interpreting Hawaii's similar provision. *See id.* at 345–47, 162 P.3d at 739–41.

This court also found Alaska's case law "instructive in interpreting our own clause" because "Alaska's constitutional pension provision is nearly identical in wording and substance to Hawaii's provision." *Id.* at 347, 162 P.3d at 741. Alaska's provision states: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship.

Accrued benefits of these systems shall not be diminished or impaired." *Id.* (quoting Alaska Const. art. XII, § 7) (internal quotation marks omitted). This court observed that Alaska "adopted the New York constitutional model a few years after Hawai'i did and added the word 'accrued' before the term 'benefits.'" *Id.* However, "[d]espite this addition, Alaska has generally interpreted its provision in line with New York case law." *Id.*

### 3. *The Hawai'i Public Employees Health Fund*

Prior to July 1, 2003, both active and retired government employee health benefits plans were administered by the Hawai'i Public Employees Health Fund ("PEHF"). Established in 1961, *see* 1961 Haw. Sess. L. Act 146, §§ 1–6 at 191–96, the PEHF defined an "employee" as both an active employee of, *inter alia*, "the state or county government or the legislature" and a "retired member of the employees' retirement system, the county pension system or the police, firefighters, or bandsmen pension system of the State or county[.]" HRS § 87–1(5)(A)(v) (Supp.2000), *repealed by* 2001 Haw. Sess. L. Act 88, § 3 at 150. An "employee-beneficiary" was defined in pertinent part as

> an employee, . . . an employee who retired prior to the establishment of the fund, or the beneficiary of a retired member of the employees' retirement system, a county pension system, or a police, firefighters, or bandsmen pension system of the State or county, upon the death of the retired member and, which beneficiary, if a child, does not marry, or if a surviving spouse, does not remarry . . . and provided further that the employee, the employee's beneficiary,

or the beneficiary of the deceased retired member is deemed eligible by the board to receive health or dental services of a health benefits plan or a long-term care benefits plan[.]

HRS § 87–1(6). A "dependent-beneficiary" was defined as "an employee-beneficiary's spouse and any unmarried child, including an adoptive child, stepchild, foster child, or recognized natural child who lives with the employee-beneficiary, deemed eligible by the board to receive health or dental services of a health benefits plan." HRS § 87–1(4). A "health benefits plan" was defined as

> (A) a group insurance contract or medical, hospital, surgical, prescribed drugs, vision, or dental service agreement in which a carrier agrees to provide, pay for, arrange for, or reimburse the cost of medical, hospital, surgical, prescribed drugs, vision, or dental services as determined by the board; or (B) a similar schedule of benefits established by the board and provided through the fund *on* a self-insured basis[.]

HRS § 87–1(8).

Pursuant to HRS § 87–21 (1993), *repealed by* 2001 Haw. Sess. L. Act 88, § 3 at 150, the board of trustees of the PEHF "shall administer and carry out the purpose of the fund[,]" which, pursuant to HRS § 87–3(a) (Supp.2000), *repealed by* 2001 Haw. Sess. L. Act 88, § 3 at 150, was, in pertinent part, to "provid[e] employee-beneficiaries and dependant-beneficiaries with a health benefits plan. . . ." As such, "[t]he board may contract for [certain] health benefits plans [ ] provided that *benefits provided under any respective plan shall be equally available to all employee-beneficiaries and dependent-beneficiaries selecting the plan regardless of age* [.]" [7]

---

7. These benefit plans included:

(1) A statewide indemnity benefit plan under which a carrier agrees to pay certain sums of money not in excess of the actual expenses incurred for health services.

(2) A statewide service benefit plan under which payment is made by a carrier under contracts with physicians, hospitals, or other providers of health services, or, under certain conditions, payment is made by a carrier to an employee-beneficiary.

(3) Health maintenance organization plans, which provide or arrange health services for members on a prepaid basis, with professional services provided by physicians practicing individually or as a group in a common center or centers.

(4) Plans to offer dental benefits through a statewide indemnity plan, a statewide service benefit plan, dental maintenance organization plans, or combination thereof.

(5) Plans to offer prescription drug benefits through a statewide indemnity plan, a statewide service benefit plan, health maintenance organization plans, or combinations thereof.

(6) Plans to offer vision care benefits through a statewide indemnity plan, a state-

HRS § 87–22(b) (Supp.2000) (emphasis and brackets added), *repealed by* 2001 Haw. Sess. L. Act 88, § 3 at 150.

After the federal government established Medicare in 1966, Hawaii's legislature amended the statutes governing health benefits plans to eliminate "duplication of benefits payable under federal Medicare" to an "employee-beneficiary and his spouse," and direct the board of trustees of the PEHF to establish a health benefits plan that "shall be supplemental to the federal medicare plan." 1966 Haw. Sess. L. Act 13, § 2 at 36; *see id.* § 1(c) at 35 ("With the advent of federal Medicare, it is necessary to avoid extra expense to the State, to provide the board with the means of establishing a supplemental plan and to provide that employee beneficiaries enrolled in the federal medicare plan may participate in the supplemental plan."). The PEHF's establishment of a "supplemental" health benefits plan was subject to the following pertinent condition:

The benefits available under the plan, when taken together with the benefits available under the federal Medicare plan, *as nearly as is possible, shall approximate the benefits available under the plans set forth in section 87–22.* If, for any reason, a situation develops where the benefits available under the supplemental plan and the federal Medicare plan substantially differ from those that would otherwise be available, the board may correct this inequity to *assure substantial equality of benefits* [.]

HRS § 87–27(3) (Supp.2000) (emphases added), *repealed by* 2001 Haw. Sess. L. Act 88, § 3 at 150.

Apparently, the health benefits plans that were available to active employees contained benefits that were similar to those benefits available to retired employees. Eventually, however, the health benefits plans that were available for unionized active employees changed, as follows:

Beginning in 1984, eligible employees were given the option of obtaining health

wide service benefit plan, health maintenance organization plans, or combination thereof.

(7) A noninsured schedule of benefits similar to any of the schedule of benefits set forth in

benefit coverage through union-sponsored plans, instead of the [PEHF]. Since then, the percentage of active employees participating in union plans has grown dramatically.

Under the [PEHF], the State and counties pay 60 percent of the premiums for active employees and their dependents. Active employees pay the remaining 40 percent of the premiums. Retirees do not pay for their premiums.

On the other hand, the [PEHF] contributes roughly 70 to 90 percent of active employee insurance premiums under union plans. The unions have been able to attract more employees because they have been able to negotiate more competitive benefit packages with insurance carriers. Moreover, the unions have been able to keep costs down because they do not offer coverage to retirees, who are generally higher risks than younger, active employees.

This inequity is further compounded when unions are refunded for the overpayment of premiums. Even though the [PEHF] pays for the bulk of union-plan premiums, none of the refunded money is returned to the [PEHF].

Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1098 (brackets added).

Moreover, it was recognized that

the system of providing health benefits to public employees operates by paying for benefits contracted for by the [PEHF] on a "pay as you go" basis, without any limits on cost. In the past, when health care costs were minimal and health benefits were not considered a significant component of an employee's compensation, this was not an issue. However, as more advanced treatment, procedures, and medication are developed, their costs have also increased. Health benefits are now considered an extremely important part of an employee's compensation precisely because health care now costs so much. In addition, as more employees begin to live long-

the health benefits plans authorized in paragraphs (1) to (6).

HRS § 87–22(b)(1) to (b)(7).

er and as they learn to demand to use more benefits, the system is proving unable to keep up. The reality is that the State and the counties will be unable to pay for health benefits for their employees in the future without seriously cutting from other portions of governmental budgets if no changes are made.

Conf. Comm. Rep. No. 139, in 2001 House Journal, at 1105 (brackets added).

In 2001, Hawaii's legislature repealed HRS Chapter 87 (the PEHF) and enacted HRS Chapter 87A (the EUTF). *See* 2001 Haw. Sess. L. Act 88, §§ 1, 3 at 138, 150. According to the legislative history of Act 88, the purpose of doing so was "to establish a single health benefits delivery system for State and county employees, retirees, and their dependents." Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1097. The Committee on Conference "ensure[d]" that by making the proposed changes, both the EUTF and the State "will remain solvent" and explained: "If nothing is done now, the spiraling cost of the [PEHF] will create significant financial hardships for state taxpayers." Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1098 (brackets added). In recommending that Senate Bill number 1044 pass Final Reading, it declared:

It is not the intention of your Committee on Conference that public employees and retirees suffer a diminishment of existing health benefits. This bill will give the governing boards of the [EUTF] and [PEHF], during the transition period, complete discretion, authority, and flexibility to devise and maximize the levels and types of benefits available for public employees and retirees.

*Id.*

Although the effective date that established the EUTF was July 1, 2001, Hawaii's legislature postponed repealing HRS Chapter 87 and, consequently, the PEHF, until July 1, 2003, in order to give adequate time for a transition from the PEHF to the EUTF. *See id.; see also* 2001 Haw. Sess. L. Act 88, §§ 4–8, 10 at 150–52. As such, the legislature amended certain portions of HRS Chapter 87 in order to (1) "address the issue of spiraling costs by instituting a ceiling on public expenditures for health benefits for public employees and retirees[,]" (2) "allow the [PEHF] to work within the employer's fiscal limitations," and (3) "provide [ ] the [PEHF] with greater flexibility to, among other things, determine the types of plans, the design of plans, and the delivery of plan services." 2001 Haw. Sess. L. Act 89, § 1 at 152 (brackets added). The amendments to HRS Chapter 87 became effective on July 1, 2001. *Id.* § 9 at 155.

Significant among the amendments was the removal of certain language from HRS §§ 87–22(b) and 87–27(3). HRS § 87–22(b) (Supp.2001) was amended to read, as follows: "The board may contract for health benefits plans, including but not limited to" many different plans described by statute. Removed from the statute was any language requiring the board to contract for health benefits plans that provided benefits that "shall be equally available to all employee-beneficiaries and dependent beneficiaries selecting the plan regardless of age[.]" 2001 Haw. Sess. L. Act 89, § 1 at 154 (brackets added).

HRS § 87–27(3) (Supp.2001) was amended to read, as follows:

The benefits available under the plan, when taken together with the benefits available under the federal Medicare plan, as nearly as is possible, shall *be comparable to* the benefits available *to employee-beneficiaries and spouses who are not eligible for the federal Medicare plan.* If, for any reason, a situation develops where the benefits available under the supplemental plan and the federal Medicare plan substantially differ from those that would otherwise be available, the board may correct this inequity to assure substantial equality of benefits[.]

(Emphases and brackets added.) Replaced therein was, *inter alia,* the word "approximate" for the words "be comparable to," and the words "under the plans set forth in section 87–22" was replaced with the words "to employee-beneficiaries and spouses who are not eligible for the federal Medicare plan." 2001 Haw. Sess. L. Act 89, § 1 at 155.

#### 4. *The Hawai'i Employer-union Health Benefits Trust Fund*

Under HRS Chapter 87A, both active and retired public employee health benefits plans are currently administered by the EUTF, which is characterized by statute as a "trust fund" that "consist[s] of contributions, interest, income, dividends, refunds, rate credits, and other returns[,]" and is "under the control of" the Board of the EUTF. 2001 Haw. Sess. L. Act 88, § 1 at 145 (brackets added); *see* HRS § 87A–30 (Supp.2008) (same).

Ever since its establishment in 2001, the Board of the EUTF has been mandated to "administer and carry out the purpose of the fund," which is, among other things, to use the EUTF "to provide employee-beneficiaries and dependent-beneficiaries with health and other benefit plans, and to pay administrative and other expenses of the fund." 2001 Haw. Sess. L. Act 88, § 1 at 141, 145; see HRS §§ 87A–15,[8] –31(a)[9] (Supp.2008). In carrying out the purpose of the EUTF, the Board of the EUTF is required to provide "[h]ealth and other benefit plans ... at a cost affordable to both the public employers and public employees." HRS § 87A–15.

The words "employee," "employee-beneficiary," "dependent-beneficiary," and "health benefits plan" are all defined very similarly to, if not exactly the same as, the definitions provided by HRS Chapter 87, as quoted above. *See* HRS § 87A–1 (Supp.2008). Importantly, however, an "employee-beneficiary" is defined in HRS Chapter 87A as including, *inter alia,* both an "employee" and a "beneficiary of a retired member of the employees' retirement system[.]" *Id.* An "employee" is defined as including both (1) an active employee "of the State, county, or legislature" and (2) a "retired member of the employees' retirement system[.]" *Id.*

Similar to the 2001 amendments to the PEHF, the most recent version of HRS Chapter 87A does not include language requiring that the benefits available under the health benefits plan be "equally available to all employee-beneficiaries and dependant-beneficiaries ... regardless of age." *See* HRS § 87–22(b). Additionally, with regard to health benefits plans that are supplemental to medicare, HRS § 87A–23 (1) and (3) (Supp.2008), as quoted *supra* in footnote 5, requires the Board of the EUTF to "establish a health benefits plan, which takes into account benefits available to an employee-beneficiary and spouse under medicare," and "shall provide benefits that approximate those provided to a similarly situated beneficiary," or a "similarly situated employee-beneficiary," "not eligible for medicare."

#### 5. *A retired state or county employee's health benefits are derived from a retiree's membership in an ERS.*

 Notwithstanding whether a retired state or county employee's health benefits constitute an "accrued benefit," which is addressed *infra* in section III.A.6, Appellants assert that a retired state or county employee's health benefits are unprotected by the non-impairment clause because (1) health benefits are not included as a benefit of membership in an ERS in light of the mandated purpose of both the Territorial ERS and the ERS today, as quoted above, and (2) the framers of Hawaii's non-impairment clause intended to protect only those benefits conferred by the ERS. Appellees assert that the plain language of HRS § 87A–21 (Supp. 2008) expressly conditions a retiree's health benefits on membership in an ERS, and such a condition is sufficient to conclude that health benefits are included as a benefit of membership in an ERS.

---

8. HRS § 87A–15 provides: "The board shall administer and carry out the purpose of the fund. Health and other benefit plans shall be provided at a cost affordable to both the public employers and the public employees."

9. HRS § 87A–31(a) provides:
The fund shall be used to provide employee-beneficiaries and dependant-beneficiaries with health and other benefit plans, and to pay administrative and other expenses of the fund. All assets of the fund are and shall be dedicated to providing health and other benefits plans to the employee-beneficiaries and dependant-beneficiaries in accordance with the terms of those plans and to pay administrative and other expenses of the fund, and shall be used for no other purposes except for those set forth in this section.

HRS § 87A–21, entitled "Eligibility," provides in pertinent part:

(a) The [Board of the EUTF] shall establish eligibility criteria to determine who can qualify as an employee-beneficiary, dependent-beneficiary, or qualified-beneficiary, consistent with the provisions of this chapter.

(b) A *retired member* of the employees' retirement system; a county pension system; or a police, firefighters, and bandsmen pension system of the State or county, *shall be eligible to qualify as an employee-beneficiary:*

(1) Regardless of whether the *retired member* was actively employed by the State or county at the time of the retired employee's retirement; and

(2) Without regard to the date of the *retired member's* retirement.

(Brackets and emphases added.)

Additionally, as discussed *supra* in section III.A.4, an "employee" is defined to include, *inter alia,* a "retired member of the employees' retirement system[,]" and an "employee-beneficiary" is defined to include, *inter alia,* an "employee" and a "beneficiary of a retired member of the employees' retirement system[.]" HRS § 87A–1 (brackets added).

Appellants' first assertion emphasizes that the "benefits of membership in the ERS do not include health benefits" because "nothing in [HRS] Chapter 88 requires or allows the ERS, as the 'employees' retirement system of the State,' to provide health insurance or health benefits plans for its members." (Brackets added.) Although a retired state or county employee's health benefits are not provided for in HRS Chapter 88, and are instead provided for in HRS Chapter 87A, we believe that Appellants place too much emphasis on those benefits provided by the ERS pursuant to HRS Chapter 88.

As Appellants point out, the ERS, through HRS Chapter 88, provides for pension and other retirement benefits, and does not provide for a retiree's health benefits. However, contrary to Appellants' belief, the non-impairment clause clearly and unambiguously states that it is those "accrued benefits" arising from a state or county employee's *membership* in an ERS that "shall not be diminished or impaired," and not simply those "accrued benefits" provided by an ERS. *See* Haw. Const. art. XVI, § 2; *see also Watland,* 104 Hawai'i at 139, 85 P.3d at 1090. In other words, based on the plain language of Hawaii's non-impairment clause, the subject matter of the "contractual relationship" established by article XVI, section 2 includes the "accrued benefits" arising from a state or county employee's "membership" in an ERS, and it is these "accrued benefits" that "shall not be diminished or impaired." *See* Haw. Const. art. XVI, § 2; *see also Watland,* 104 Hawai'i at 139, 85 P.3d at 1090. Accordingly, the overlooked distinction here is that Hawaii's non-impairment clause does not refer to any specific governmental entity *per se,* as Appellants suggest, but rather refers to *membership* therein. *See* Haw. Const. art. XVI, § 2; *see also Watland,* 104 Hawai'i at 139, 85 P.3d at 1090.

Indeed, as described above, Delegate Sakakihara explained that it is *membership* therein that is mandatory upon employment of every state or county employee, and, as a result of this mandatory requirement, protection from diminishment or impairment should be accorded to those accrued benefits arising therefrom "if the government desires to maintain [the] system in good faith with the employees of the government." *See* 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 495 (brackets added). Mandatory membership in the ERS continues today. *See* HRS § 88–42 (Supp.2008) ("Except as otherwise provided in this part, all employees of the Territory or any county on July 1, 1945, shall be members of the system on that date, and all persons who thereafter enter or reenter the service of the State or any county shall become members at the time of their entry or reentry."); *see also* HRS § 88–21 (defining a "member" as "any person included in the membership of the system"); *id.* (defining "system" as "the employees' retirement system of the State of Hawai'i").

Furthermore, Appellants' second assertion that the framers of Hawaii's non-impairment clause intended to protect only those benefits conferred by the ERS is based on the de-

bates of the 1950 Constitutional Convention. However, the EUTF's predecessor, the PEHF, was not enacted until 1961, which is eleven years after the 1950 Constitutional Convention. Obviously, then, the Constitutional Convention could not consider whether protection should be provided to health benefits for retired state and county employees pursuant to the PEHF. Moreover, as discussed above, it is those "accrued benefits" arising from *membership* in an ERS, and not simply those benefits provided by an ERS, that is protected by article XVI, section 2.

Additionally, the delegates considered the possibility that the legislature may, sometime in the future, change the "form of the retirement system for future employees...."[10] 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 498. In fact, as described *supra* in section III.A.2, it was precisely this possibility of future change that led the delegates to add the word "accrued" before "benefits." *See* 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 498–99; *see also Kaho'Ohanohano*, 114 Hawai'i at 342, 162 P.3d at 736 ("[A]s described by the Committee of the Whole, the intent of article XVI, section 2 was in part to *provide the legislature with the flexibility* to 'reduce benefits as to ... persons already in the system in [ ] so [ ] far as their *future services* were concerned[,]' but '[i]t could not, however, reduce the benefits attributable to *past services.*'" (Emphases added and in original, ellipsis and brackets in original, citation omitted.)). Although the delegates were clearly concerned with the possibility that an employee's accrued benefits could be diminished or impaired at a future point in time, *see* 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 493–99, nowhere is it indicated that the framers intended to prevent an extension of constitutional protection to any additional benefits that the legislature may, at some future time, decide to provide to state and county government employees.

As such, we hold that article XVI, section 2 evinces an intent to protect a state or county government employee's "accrued benefits" that are derived from that employee's "membership" in an ERS. As we observed in *Kaho'Ohanohano*, the framers of article XVI, section 2 intended to provide the legislature with flexibility to make changes to the system so long as the changes neither diminished nor impaired a member's accrued benefits. *See* 114 Hawai'i at 342, 162 P.3d at 736; Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330. Accordingly, although article XVI, section 2 provides protection for any additional benefits that the legislature may decide to provide to state and county government employees as members of an ERS, consistent with the framers' intent, the legislature may also " 'reduce benefits as to ... persons already in the system in [ ] so [ ] far as their *future services* were concerned[,]' but '[i]t could not, however, reduce the benefits attributable to *past services.*' " *See Kaho'Ohanohano*, 114 Hawai'i at 342, 162 P.3d at 736 (quoting Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330) (emphases, ellipsis, and brackets in original).

With regard to health benefits included in a health benefits plan, the legislature recognized that "[h]ealth benefits are now considered an extremely important part of an employee's compensation precisely because health care now costs so much." Conf. Comm. Rep. No. 139, in 2001 House Journal, at 1105 (brackets added). As such, the legislative history to the 2 001 amendments to HRS Chapters 87 and 87A evinces an intent

---

10. In the 1950 Constitutional Convention, Delegate King stated:

> KING: I'd like to ask Delegate Ohrt a question. Assuming the legislature changes the form of the retirement system for future employees at some date five or ten years from now, sets up what is in effect a different system, then it's not obligated under this provision of the Constitution to retain the same contractual relation, but can establish a new one?

> OHRT: That is correct.
> KING: Well then, that agrees with Mr. Mau. In other words this provision only protects those who are in the system as it now exists, and if the legislature reorganized the system it could apply to all new employees. But the contract would remain in existence for all of those who had entered prior to that change.
> 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 498.

not only to address the "spiraling costs" associated with the PEHF, but also to prevent a "diminishment of existing health benefits" for "public employees and retirees." Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1097.

Viewed in this manner, "if the government desires to maintain [the] system in good faith with the employees of the government," *see* 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 495 (brackets added), we hold that a retired employee's health benefits that are included in a health benefits plan falls within the constitutional protection contemplated by article XVI, section 2 inasmuch as HRS § 87A–21(b) clearly and unambiguously conditions a retired state or county government employee's eligibility for health benefits on, *inter alia,* being "a retired member of the employees' retirement system[.]" (Brackets added.) Therefore, Appellants' assertion to the contrary and their interpretation of the framers' intent are unpersuasive.

Appellants also contend that their interpretation of article XVI, section 2 "as protecting only pension and retirement allowances" is supported by *Lippman.* In *Lippman,* a board of education adopted a resolution directing payment by it of 100% of the health insurance premiums for its retired employees, and 50% of the premiums for dependents of retirees. 66 N.Y.2d at 316, 496 N.Y.S.2d at 988, 487 N.E.2d at 898. Eventually, the board of education adopted a subsequent resolution that reduced the contribution for retired employees from 100% to 50% of the health insurance premium, and dependents of retirees from 50% to 35% of the premium. *Id.* The plaintiffs sought a declaratory judgment that the reduction in contributions was made in violation of article V, section 7 of the New York Constitution. *Id.*

Similar to our holding here, the New York court observed that article V, section 7 "protects only the benefits of membership in a retirement system[.]" *Id.* at 317, 496 N.Y.S.2d at 989, 487 N.E.2d at 899 (brackets added). However, the New York court continued by stating: "[O]ther employment conditions, though they may be protected by statute, resolution or individual or collective

bargaining agreement, are not within [article V, section 7's] coverage." *Id.* (brackets added). Consistent with the intent of the framers of article V, section 7, the New York court determined that "more than an incidental relationship to the retirement system must be found before an employee benefit will be held to be within the area of action prohibited by the [New York] Constitution." *Id.* Instead, there must be either a "direct relationship to retirement benefits" or a "real and important nexus" to the same. *Id.* at 318, 496 N.Y.S.2d at 990, 487 N.E.2d at 900.

In *Lippman,* the New York court found that "the only relation between health benefits and retirement benefits" in that case was "the purely incidental one that the latter provides the means by which the former is paid in those instances where the employer has elected to pay less than the full premium." *Id.* As such, the New York court determined:

> Payment of part or all of his or her health insurance premium is a benefit that comes to a retired employee *not as a benefit of membership in the retirement system* but because he or she was an employee of the State of New York or participating employer, as to whom the Legislature has provided, in Civil Service Law § 167, that part of the premium shall be paid by the employer and that the employer may, if it so chooses, increase the portion of the premium that it pays.

*Id.* at 319, 496 N.Y.S.2d at 990, 487 N.E.2d at 900 (emphasis added).

Significantly, however, the pertinent laws at issue in *Lippman* do not indicate that a retired employee's eligibility for health benefits is conditioned in part on membership in a retirement system. *See id.* (quoting Civil Service Law § 167(3) as stating: "Contributions, if any, required to be paid by an employee or a *retired employee* for his coverage and for the coverage of his dependents, if any, shall be deducted from his salary payments or from his retirement allowance, as the case may be" (emphasis added)). Unlike *Lippman,* such a condition exists in the EUTF. *See* HRS § 87A–21(b).

Moreover, the health benefits at issue in this case is different from *Lippman*. In Hawai'i, and similar to the board of education in *Lippman*, the state and county governments contribute a certain amount of money every month to the EUTF on behalf of each active employee and retired member of an ERS as an "employee" or "employee-beneficiary." *See* HRS §§ 87A–32 to –36 (Supp. 2008); *see also* HRS § 87A–1 (defining "employee" and "employee-beneficiary"). "The monthly contribution by the State or county shall not exceed the actual cost of the health benefits plan or plans." HRS § 87A–33(b) to (c). If the amount contributed by the state or county government is insufficient to cover all of the monthly premium for the employee-beneficiary's selected health benefits plan, the active employee or retired member of an ERS, as an "employee-beneficiary," is required to cover the difference. *See* HRS § 87A–40 (a) (Supp.2008); [11] *see also* HRS § 87A–1 (defining an "employee-beneficiary").

However, unlike *Lippman*, whether the state or county government's contribution to the EUTF is protected by Hawaii's non-impairment clause is not the issue in this case. Indeed, unlike the state or county government contributions mentioned above, the health benefits in this case are provided by a "carrier," which is defined as "a voluntary association, corporation, partnership, or organization engaged in providing, paying for, arranging for, or reimbursing the cost of, health benefits or long-term care benefits under group insurance contracts." HRS § 87A–1 (defining, also, a "health benefits plan" as "a group insurance contract or service agreement that may include medical, hospital, surgical, prescribed drugs, vision, and dental services, in which *a carrier* agrees to provide, pay for, arrange for, or reimburse the cost of the services as determined by the board" (emphasis added)).[12] The Board of the EUTF is required to "establish the health benefits plan, which takes into account

benefits available to an employee-beneficiary and spouse under medicare, subject to [certain] conditions[.]" HRS § 87A–23 (brackets added). Accordingly, the issue in this case is whether the health benefits that are provided by a "carrier" and included in a health benefits plan are protected from diminishment or impairment once "accrued" by article XVI, section 2 of the Hawai'i constitution. Therefore, for these reasons *Lippman* is unpersuasive.

6. *Health benefits for retirees constitute an "accrued benefit" arising from a person's membership in an ERS.*

Appellants essentially contend that, unlike pension and retirement allowances, "neither the level nor type of retiree health benefits accumulate or grow based on the number of years that an employee works." As such, Appellants assert that a retiree's health benefits are "not constitutionally protected because they are not 'accrued benefits.'"

More specifically, Appellants point out that, under the ERS, both the employer and employee contribute a certain amount "to fund future retirement benefits." These contributions, according to Appellants, "are accumulated in annuity savings and pension annuity funds and are invested so that they grow over time."

Comparatively, Appellants point out that, under the EUTF, the employer, active employee, and retired employee "make contributions [to the EUTF] that are intended to fund only the current costs of active employee and retiree health benefits plans, i.e., pay-as-you-go funding." (Brackets added.) Because, according to Appellants, the contributions made to the EUTF neither accumulate nor grow in the same manner as the contributions made to an ERS, Appellants assert that a retiree's health benefits cannot constitute "accrued benefits" pursuant to article XVI, section 2.

---

**11.** HRS 87A–40(a) provides, in pertinent part: "Each employee-beneficiary shall make a monthly contribution to the fund amounting to the difference between the monthly charge of the health benefits plan selected by the employee-beneficiary and the contribution made by the

State or county for the employee-beneficiary to the fund."

**12.** The "carriers" in this case appear to be Hawaii Medical Service Association ("HMSA") and Kaiser Permanente.

However, as discussed above, the issue here is whether the health benefits that are included in a health benefits plan constitute "accrued benefits." The issue is not whether the contributions made by the state or county governments to the EUTF constitute "accrued benefits."

Additionally, as discussed *supra* in section III.A.2, this court observed in *Kaho'Ohanohano* that by adding the word "accrued" before "benefits," "the delegates *only* sought to indicate that there 'can be no impairment of past benefits, but that [the] future benefits can be changed by the legislature[.]' " 114 Hawai'i at 341, 162 P.3d at 734 (quoting 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 498) (emphasis added and brackets in original). Accordingly, article XVI, section 2 was intended in part to provide the legislature with flexibility to make future changes to the retirement system, which included changing the benefits that are provided to members of an ERS, as long as the changes did not reduce an employee's benefits attributable to past services. *See id.* There is also nothing to suggest that any additional benefits, once "accrued," cannot be provided protection from diminishment or impairment pursuant to article XVI, section 2 "if the government desires to maintain [the] system in good faith with the employees of the government." *See* 2 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 495 (brackets added). Therefore, Appellants' interpretation of the word "accrued" is unpersuasive.[13]

Instead, as described *supra* in section III.A.2, the word "accrued" was added before "benefits" to refer to a particular point in time in order to ensure that any future change to the benefits provided to a retired state or county employee would not diminish or impair those benefits that have already "accrued."[14] *See Kaho'Ohanohano*, 114 Hawai'i at 343–44, 162 P.3d at 737–38. As such, with regard to future changes, "the legislature could reduce benefits as to (1) new entrants into a retirement system, or (2) as to persons already in the system in [ ] so [ ] far as their future services were concerned. *It could not, however, reduce the benefits attributable to past services.*" *Id.* (quoting Comm. of the Whole Rep. No. 18 in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950, at 330) (block format omitted, emphasis omitted and in original, brackets in original). Therefore, Appellants' assertions are unpersuasive, and we hold that health benefits for retired state and county employees constitute "accrued benefits" pursuant to article XVI, section 2 of the Hawai'i Constitution.[15]

## B. The Circuit Court Erred By Concluding That HRS Chapter 87A Requires That Retiree Health Benefits Reasonably Approximate Those Of Active Workers.

Based on the plain language and legislative history of HRS Chapter 87A, Appellants assert that HRS Chapter 87A does not require that retired state and county employees be given the same or similar health benefits as active employees. Based on HRS § 87A–23 in particular, Appellants assert that the words "similarly situated beneficiary not eligible for medicare," as those words are used in HRS § 87A–23(1), or "similarly situated employee-beneficiary not eligible for medicare," as those words are used in HRS § 87A–23(3), does not require a com-

---

13. Appellants rely on *Studier v. Michigan Public School Employees' Retirement Board*, 472 Mich. 642, 698 N.W.2d 350, 355 (2005) as support for their assertion. However, the Michigan Constitution "prohibits the state or a political subdivision from diminishing or impairing the '*accrued financial benefits*' of any pension plan or retirement system it offers." *Id.* at 354 (quoting Mich. Const. art. 9, § 24) (emphasis added). Unlike the Michigan Constitution, Hawaii's non-impairment clause uses the words "accrued benefits" without qualifying the word "benefits" with "financial." *See* Haw. Const. art. XVI, § 2. Therefore, *Studier* is unpersuasive.

14. Discerning whether health benefits accrue at one point in time or another (i.e. either upon employment or at some time after employment) is unnecessary and has not been argued by Appellants. Therefore, we express no opinion on this issue.

15. We decline to address any issues raised by the concurring opinion because they have not been argued on appeal in this case.

parison between all retired members of an ERS on the one hand and all active employees on the other hand, as the circuit court determined. Instead, Appellants assert that the words "similarly situated" require a comparison between a Medicare eligible retiree and an early retiree who by age does not yet qualify for Medicare.

■ More specifically, Appellants contend that the circuit court's interpretation renders the words "similarly situated" superfluous and meaningless. Although the statutory definition of "employee-beneficiary" is broad and includes both an active and a retired employee, see HRS § 87A–1, the words "similarly situated" are not defined by HRS Chapter 87A or HRS § 87A–23. Looking to extrinsic aids, the word "similar" is defined as "having likeness or resemblance, esp. in a general way[.]" The Random House College Dictionary 1226 (rev. ed.1979) (brackets added); see Singleton v. Liquor Comm'n, County of Hawai'i, 111 Hawai'i 234, 243–44, 140 P.3d 1014, 1023–24 (2006) ("[W]here a term is not statutorily defined ... we may rely on extrinsic aids to determine such intent. Legal and lay dictionaries are extrinsic aids which may be helpful in discerning the meaning of statutory terms." (Brackets added, ellipsis in original, internal quotation marks and citation omitted.)). The word "situated" is defined as "located[,] placed" or "placed in a particular position or condition[.]" The Random House College Dictionary at 1230 (brackets added). Based on these definitions, Appellants assert that Medicare eligible retirees and retirees who by age do not yet qualify for Medicare are "similarly situated" for the following reasons: (1) "they both share the same employment status"; (2) "unlike active employees, both are subject to specific statutory percentage and dollar limitations on employer contributions for the health benefits" pursuant to HRS §§ 87A–33 to –36; (3) "both are rated together for underwriting purposes"; and (4) "both are more likely to share common characteristics related to medical needs."

Appellees admit that Kaiser Permanente's "EUTF health benefits plan" offered retired state and county employees the same benefits as active employees. However, Appellees point out that the active employees who are insured by HMSA are "getting substantially better benefits" than retirees under HMSA. Pursuant to the legislative history of HRS Chapter 87A, Appellees assert that the legislature intended that HRS Chapter 87A was to provide "parity of benefits" between active and retired employees.

To reiterate, the circuit court determined not only that the words "similarly situated beneficiary not eligible for medicare" or "similarly situated employee-beneficiary not eligible for medicare" "invokes comparison between retirees and active employees," but also that the health benefits that are provided to retirees must "reasonably approximate" those benefits provided to active employees. The circuit court found that the following benefits provided to retirees "exemplify benefits that are not reasonably approximate" to those benefits provided to active employees, which it concluded was "in violation of state law": (1) active employees were provided with a $2,000 maximum dental benefit while retirees had $1,000; (2) active employees were provided with 80% coverage for endodontic treatment while retirees had 60% coverage; and (3) active employees were provided with 90% radiation therapy coverage while retirees were provided with 80% outpatient radiation therapy after payment of an annual deductible. We disagree with the circuit court's conclusion.

The 2001 amendments to the HRS omitted or changed any pertinent statutory language that required the Board of the EUTF to provide health benefits to retirees that are "reasonably approximate" [16] to those benefits provided to active employees. For example, the 2001 amendments to the HRS that pertained to the PEHF, as discussed supra, amended HRS § 87–22(b) by removing any language that required the board to contract for health benefits plans that provided benefits that "shall be equally available to all

---

**16.** We note that the circuit court observed in its decision and order that "[Appellees] ... conced[d] ... that the [health benefits] plans need

not be identical, so long as they are reasonably approximate; i.e. near or close."

employee-beneficiaries and dependent beneficiaries selecting the plan regardless of age[.]" 2001 Haw. Sess. L. Act 89, § 1 at 154 (brackets added). Moreover, HRS Chapter 87A no longer required the Board of the EUTF to "assure substantial equality of benefits" or ensure that the health benefits available under a health benefits plan supplemental to Medicare, "when taken together with the benefits available under the federal Medicare plan, as nearly as is possible, shall approximate the benefits available under the plans set forth in section 87–22." *See* 2001 Haw. Sess. L. Act 89, § 1 at 155; *see also* HRS § 87A–23.

 in light of these changes, had the legislature intended to maintain the "reasonably approximate" benefits requirement, it could have left the pertinent statutory language unamended. *See Lanai Co. v. Land Use Comm'n,* 105 Hawai'i 296, 318–19, 97 P.3d 372, 394–95 (2004) ("There is no provision in HRS § 205–12 that expressly delegates enforcement power to the [Land Use Commission]. If the legislature intended to grant the [Land Use Commission] enforcement powers, it could have expressly provided the [Land Use Commission] with such power."). "By empowering the [Board of the EUTF] to establish the health benefits plan, the legislature granted the [Board] discretion in developing the plan." *Awakuni,* 115 Hawai'i at 135, 165 P.3d at 1036 (brackets added). This discretion is "broad," *id.,* and apparently must take into consideration the cost of the health benefits plan. *See* Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1098 ("If nothing is done now, the spiraling cost of the Health Fund will create significant financial hardships for state taxpayers. Recognizing the urgency of this matter, ... reforming the Health Fund is the responsible thing to do."). By expressly changing any reference to a "reasonably approximate" benefits requirement, it is apparent that the legislature did not intend to continue to impose such a restriction upon the Board of the

EUTF's discretion. *See id.* at 1097–99; *Lanai Co.,* 105 Hawai'i at 319, 97 P.3d at 395; *see also Camara v. Agsalud,* 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) (explaining that "courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute"). Therefore, we hold that the words "similarly situated beneficiary not eligible for medicare," as those words are used in HRS § 87A–23(1), or "similarly situated employee-beneficiary not eligible for medicare," as those words are used in HRS § 87A–23(3), invoke a comparison between Medicare eligible retirees and retirees who do not qualify for Medicare. *See* Conf. Comm. Rep. No. 124, in 2001 House Journal, at 1097–99; *Lanai Co.,* 105 Hawai'i at 318–19, 97 P.3d at 394–95; *see also Singleton,* 111 Hawai'i at 243–44, 140 P.3d at 1023–24. Because we hold as such, HRS Chapter 87A does not require the Board of the EUTF to provide health benefits plans to retirees whose benefits "reasonably approximate" those benefits provided to active employees.[17]

## IV. CONCLUSION

Based upon the foregoing analysis, we affirm in part and reverse in part the circuit court's August 18, 2008 final judgment.

Concurring Opinion by ACOBA, J.

I agree with the majority's reasoning that the term "accrued benefits" in article XVI, section 2 of the Hawai'i Constitution includes health plans of State and County retirees. I concur in the result only as to the majority's application of Hawai'i Revised Statutes (HRS) § 87A–23(1) (Supp.2006) (stating that "[t]he [health] plan ... shall provide benefits that approximate those provided to a similarly situated beneficiary not eligible for medi-

---

**17.** We note that Appellees do not assert that any of the pertinent 2001 amendments to the HRS are unconstitutional in light of Hawaii's non-impairment clause. Instead, they (1) aver that the circuit court "properly held that the Board's decision was unconstitutional" but made no find-

ing with regard to whether the statutes themselves are unconstitutional, and (2) assert in the alternative that, "[e]ven if the Non–Impairment Clause did not exist ..., Retirees' health benefits would still be ... protected" by the contracts clause of the state and federal constitutions.

care")[1] and HRS § 87A–23(3) (Supp.2006) (stating that "[t]he [health] benefits available ... shall approximate the benefits that would be provided to a similarly situated employee-beneficiary not eligible for medicare").[2]

I write separately in regard to the majority's position that it is unnecessary to discuss whether health benefits accrued either upon the employee's membership in the Employee Retirement System (ERS) or at some point in time after the employee became a member of the ERS. Majority opinion at 419, 228 P.3d at 299 n. 14. The majority does not address this issue stating that it "declines to address any issues raised by [this] opinion because they have not been argued on appeal on this case." *Id.* at 419, 228 P.3d at 299 n. 15.

However, in their joint opening brief, Appellee–Appellant State of Hawai'i and Appellee–Cross–Appellant Board of Trustees of the Hawaii Employer-union Health Benefits Trust Fund [collectively, "Appellants"] argued that "health benefits are not included among the 'accrued benefits' protected by Article XVI, Section 2." in response, Appellants–Appellees Marion Everson, James Dannenberg, Billy Southwood, Valerie Yamada Southwood, Duane Preble, and Sarah Preble [collectively, "Appellees"] argued that "public employees' health benefits accrue and fully vest at or before retirement; there is no waiting period." At oral argument, counsel for Appellees further stated their position:

[APPELLEES' COUNSEL] ... *I would ask you to look at the record, this is in volume 2, page 249. You'll find ... a copy of the 1978 pamphlet, which this court considered in the first Chun case in 1980[, Chun v. Employees' Ret. Sys. of the* State of Hawaii, 61 Haw. 596, 607 P.2d 415 (1980),] and the court at that time said that this pamphlet was entitled to great weight *in understanding how ... the pension law was to be applied, and in this pamphlet ... one of the questions that is asked is, "Am I entitled to other benefits?" and this pamphlet put out by the employee's retirement system says, "Yes. In addition to cost of living benefits, you are entitled to medical care for you and your family, without cost."*

[JUSTICE ACOBA]: ... [Appellants] make[ ] the argument that there are those pamphlets out there but the law has changed since then. *But the reason you rely on those pamphlets is to indicate that benefits have been, in the past, a ... part of the membership ... part of the retirement membership status.*

[APPELLEES' COUNSEL]: *Package, that's right. They were part of the package and they became vested, or in the terms of article XVI, section 2. they became accrued when the members served during the time that these benefits were promised.* And it is true that in 2001 they changed the law but under article XVI they had the ability to change the law in 2001 only prospectively; and to say that for people hired after 2001 the rules were going to change, and from time to time they have done that, tinkering with the benefits that new employees get. But they cannot, under the constitution, tinker with the benefits of membership for people who have worked and given their services based on that bargain that was struck.

---

1. HRS § 87A–23(1) states as follows:
 **Health benefits plan supplemental to medicare.** The board shall establish a health benefits plan, which takes into account benefits available to an employee-beneficiary and spouse under medicare, subject to the following conditions:
 (1) There shall be no duplication of benefits payable under medicare. The plan under this section, which shall be secondary to medicare, when combined with medicare and any other plan to which the health benefits plan is subordinate under the National Association of Insurance Commissioners' coordination of benefit rules, shall provide benefits that approximate those provided to a similarly situated beneficiary not eligible for medicare[.]

2. Subsection (3) states as follows:
 (3) The benefits available under this plan, when combined with benefits available under medicare or any other coverage or plan to which this plan is subordinate under the National Association of Insurance Commissioners' coordination of benefit rules, shall approximate the benefits that would be provided to a similarly situated employee-beneficiary not eligible for medicare[.]

MP3: Oral Argument, Hawai'i Supreme Court, at 00:27:54 (Nov. 19, 2009), *available at* http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc29359.html (emphases added). As Appellees' counsel maintained in oral argument, health benefits "accrued when the members served during the time that these benefits were promised." *Id.*

Inasmuch as we hold that health benefits for retired State and County employees are "accrued benefits" under article XVI, section 2 of the Hawai'i Constitution, such benefits would fall within the scope of such protection and cannot be abrogated by statute. Hence, the accrual of such benefits cannot be diminished or impaired by HRS § 87A–23(1) and (3). Because such benefits cannot be diminished, that array of health plan services most advantageous to the employee during his or her service must be deemed the "accrued benefits" under article XVI, section 2; otherwise "diminishment or impairment" of accrued benefits would result.