**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000432**
**16-JAN-2025**
**07:46 AM**
**Dkt. 52 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

RANDOLPH R. SLATON and SEIKO KAWANO, Plaintiffs-Appellants,
v.
STATE OF HAWAIʻI; THE BOARD OF TRUSTEES OF THE STATE OF HAWAIʻI
EMPLOYER-UNION HEALTH BENEFITS TRUST FUND, in their official
capacities; THE ADMINISTRATOR OF THE STATE OF HAWAIʻI EMPLOYER-
UNION HEALTH BENEFITS TRUST FUND, in his official capacity,
Defendants-Appellees,
and
JOHN DOES 1-100; MARY ROES 1-100; DOE PARTNERSHIPS 1-100; DOES
TRUSTS 1-100; DOE ENTITIES 1-100; DOE ESTATES 1-100; and DOE
CORPORATIONS 1-100, Defendants

NO. CAAP-20-0000432

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC191000073)

JANUARY 16, 2025

HIRAOKA, PRESIDING JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY NAKASONE, J.

This appeal concerns whether a retired public employee with non-continuous employment is entitled to full or partial contribution by the State of Hawaiʻi toward his retiree health insurance premiums, under Hawaii Revised Statutes (**HRS**) Chapter 87A, "Hawaii Employer-Union Health Benefits Trust Fund" (**EUTF**). The statutes at issue in this case prescribe 100% or partial employer contribution based on date of hire and years of service.[1]

The retired public employee in this case, Plaintiff-Appellant Randolph R. Slaton (**Slaton**) had two separated periods of public employment, from 1975 to 1978, and 2006 to 2015, totaling 15 years and nine months of service[2] with two different dates of hire.  Between these two public employment periods, Slaton had a 27-year break in his years of service, and the employer contribution law changed.  Slaton challenges the EUTF's calculation upon his December 31, 2015 retirement, of the employer contribution applicable to Slaton using Slaton's last date of hire in 2006, instead of his earlier date of hire in 1975.

We hold that:  (1) under Dannenberg v. State, 139 Hawaiʻi 39, 53, 383 P.3d 1177, 1191 (2016), Slaton did not

---

[1]     These statutes, HRS §§ 87A-33, -35, and -36, quoted infra, comprise a three-tier statutory employer contribution framework based on the employee's date of hire:  (1) retirees hired before July 1, 1996 under HRS § 87A-33(a)(5) (**Tier 1**); (2) retirees hired after June 30, 1996 and before July 1, 2001 under HRS § 87A-35 (**Tier 2**); and (3) retirees hired after June 30, 2001 under HRS § 87A-36 (**Tier 3**).

[2]     The record reflects the Hawaiʻi Employees' Retirement System (**ERS**) reported to Slaton that his credited service consisted of 12 years and 2 months of "Hybrid Benefit Service," 3 years and 7 months of "Noncontributory Benefit Service," and an additional 1 year and 11 months of credited military service from November 1, 2002 through September 30, 2004.

satisfy the condition precedent under the employer contribution law applicable to his 1975 to 1978 employment, to receive the 100% employer contribution benefit; and thus, there was no benefit attributable to his "past services" in 1975 to 1978 subject to the non-impairment clause of the Hawaiʻi Constitution,[3] when the employer contribution law subsequently changed with respect to the "future services" Slaton rendered in 2006 to 2015;[4] and (2) under the employer contribution law applicable to Slaton's 2006 to 2015 term of employment, Slaton did not qualify for the 100% employer contribution benefit based on his earlier 1975 date of hire, because HRS § 87A-33(a)(5) and its related text in HRS § 87A-35(a)(2) did not apply where there was a break in the ten-year service requirement; and thus, the partial employer contribution benefit under HRS § 87A-36, based on Slaton's last date of hire in 2006, applies in this case.

Plaintiffs-Appellants Slaton, a licensed attorney representing himself, and his dependent-beneficiary, Seiko Kawano (collectively, **Appellants**) appeal from the June 25, 2020 "Final Judgment on Count I (Declaratory Relief)" (**Final Judgment**) in favor of Defendants-Appellees, State of Hawaiʻi, the EUTF Board of Trustees, and the EUTF Administrator

---

[3]  Article 16, section 2 of the Hawaiʻi Constitution sets forth what is referred to as the "non-impairment clause," which states: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired." Everson v. State, 122 Hawaiʻi 402, 408, 228 P.3d 282, 288 (2010).

[4]  See Dannenberg, 139 Hawaiʻi at 51, 383 P.3d at 1189 (explaining that the legislature had flexibility to make changes so long as accrued benefits were not impaired, by "reduc[ing] benefits as to persons already in the system in so far as their *future services* were concerned, but [the legislature] could not, however, reduce the benefits attributable to *past services*" (quoting Everson, 122 Hawaiʻi at 416, 228 P.3d at 296)). Both Dannenberg and Everson are discussed infra.

(collectively, the **State**); and the May 21, 2020 orders granting and denying the parties' cross-motions for partial summary judgment (**Cross-MPSJs**) on Count I (**MPSJ Orders**). The MPSJ Orders and the Final Judgment on Count I were all filed and entered by the Circuit Court of the First Circuit (**Circuit Court**).[5]

On appeal, Appellants contend that the Circuit Court erred in granting the State's MPSJ and in denying Appellants' MPSJ, "based on its wrong conclusion that the last date of [Slaton's] hire controlled the employer premium contribution." We affirm.

#### I. BACKGROUND

Appellants' January 14, 2019 Complaint raised four causes of action: Count I for "Declaratory Relief," Count II for "Violation of the Hawai'i Constitution," Count III for "Accounting and Reimbursement," and Count IV for "Injunctive Relief." The Complaint alleged that Appellants were entitled to 100% employer contribution for their retirement health insurance premiums under HRS § 87A-33(a)(5) based on Slaton's 1975 date of hire; and the alleged 25% decrease in the employer contribution based on the EUTF's calculation using Slaton's 2006 date of hire violated HRS § 87A-33(a)(5) and Article 16, section 2 of the Hawai'i Constitution. The Cross-MPSJs involved Count I, which stated: "[Appellants] are entitled to a declaration that § 87A-33(a)(5), H.R.S., controls their situation and that the 'date of hire' refers to Plaintiff Slaton's original date of hire and not his date of re-hire."

Appellants' March 1, 2019 MPSJ advanced the same argument they raise on appeal, that the EUTF must use Slaton's earlier 1975 date of hire; and that pursuant to HRS

---

[5] The Honorable Gary W.B. Chang presided.

4

§ 87A-33(a)(5) applicable to retired employees hired before July 1, 1996, Slaton was entitled to 100% employer contribution for his health insurance premiums.  The State's December 9, 2019 Cross-MPSJ advanced the same argument they raise on appeal, that Slaton's last 2006 date of hire applies due to Slaton's break in the ten-year service requirement under HRS § 87A-33(a)(5) and its related text in HRS § 87A-35;[6] and that pursuant to HRS

---

[6]      HRS § 87A-33 provides for an employer contribution that "shall not exceed the actual cost of the health benefit plan or plans" for qualifying employee-beneficiaries and their dependent-beneficiaries.  The parties agree that this statute provides for 100% employer contribution for those meeting the qualifications of the different categories set forth in subsections (a)(1) through (a)(7).  This case involves HRS § 87A-33(a)(5) (1993 & 2006 Supp.), which applies to Tier 1 retired employees with a pre-July 1, 1996 date of hire, and it states:

> **§87A-33  State and county contributions; retired employees.**  (a) Notwithstanding any law to the contrary, this section shall apply to state and county contributions to the fund for:
>
> . . . .
>
> (5) An employee-beneficiary who:
>
> > (A) Was hired before July 1, 1996;
> >
> > (B) Retired after June 30, 1984; and
> >
> > (C) Who has ten years or more of credited service, excluding sick leave;
>
> . . . .

HRS § 87A-35 (1993 & 2006 Supp.) provides for partial employer contribution of 50% or 75% for qualifying retired employees based on their 1996 to 2001 date of hire and years of service.  While it applies to Tier 2 retired employees hired after June 30, 1996 and before July 1, 2001, it also contains an exclusion with a "Break in service" definition relating to the Tier 1 retired employees with a pre-July 1, 1996 date of hire under HRS § 87A-33, as follows:

> **§87A-35  State and county contributions; employees hired after June 30, 1996, but before July 1, 2001, and retired with fewer than twenty-five years of service.**  (a) This section shall apply to state and county contributions to the fund for employees who were hired after June 30, 1996, but before July 1, 2001, and who retire with fewer than twenty-five years of credited service, excluding sick

§ 87A-36 applicable to retired employees hired after June 30, 2001,[7] Slaton was entitled to partial employer contribution.

---

leave; <u>provided that this section shall not apply to the following employees, for whom state and county contributions shall be made as provided by section 87A-33</u>:

    (1) An employee hired prior to July 1, 1996, who transfers employment after June 30, 1996, and who cumulatively accrues at least ten years of credited service; and

    (2) <u>An employee hired prior to July 1, 1996, who has at least ten years of credited service prior to a break in service</u>.

For purposes of this section:

<u>"Break in service" means to leave state or county employment for more than ninety calendar days before returning to state or county employment</u>.

"Transfer" means to leave state or county employment and return to state or county employment within ninety calendar days.

. . . .

(Emphases added.) Under HRS § 87A-35(a)(2)'s underscored text above that we apply <u>infra</u>, retired employees with a pre-July 1, 1996 date of hire must have ten years of unbroken service to qualify for the 100% employer contribution under HRS § 87A-33(a)(5).

[7] HRS § 87A-36 (1993 & 2006 Supp.) provides for 50%, 75%, or 100% employer contribution for Tier 3 retired employees based on their after-June 30, 2001 date of hire and years of service, as follows:

**§ 87A-36 State and county contributions; employees hired after June 30, 2001, and retired.** (a) This section shall apply to state and county contributions to the fund for employees hired after June 30, 2001, and who retired, except that this section shall not apply to the following employees, for whom state and county contributions shall be made as provided by section 87A-35:

    (1) An employee hired after June 30, 1996, and prior to July 1, 2001, who transfers employment after June 30, 2001, and who cumulatively accrues at least ten years of credited service; and

    (2) An employee hired after June 30, 1996, and prior to July 1, 2001, who has at least ten years of credited service prior to a break in service.

Following the February 11, 2020 hearing on the Cross-MPSJs on Count I, the Circuit Court granted the State's MPSJ and denied Appellants' MPSJ, as follows:

> THE COURT: Okay. I think that it's very clear that in 2001, when Chapter 87A was enacted, that the legislature did address noncontinuous government employees and how they were to be treated. Before that, the statute was not clear and appears to only suggest what happens in continuous employment and the employee retires. So it was somewhat vague as to what a noncontinuous employee's rights were under the prior Chapter 87.
>
> So the way this court looks at the case, the primary dispute comes down to the interpretation of the constitution. Our Hawaii state constitution says in Article 16, Section 2, that accrued benefits cannot be diminished or impaired. So the question becomes whether a higher contribution by the employer of 100 percent contributions that [Slaton] claims was available in 1975 when he first joined government service, and whether that was an accrued benefit. And this court has considered the record and the argument of counsel, and the Court concludes that the 100 percent contribution benefit was not an accrued benefit as of September 1, 1975.
>
> The concept of accrual is, unfortunately, not well defined anywhere in the law, so this court relies upon common definition [sic] of accrued, that

---

> [(Definitions for "[b]reak in service" and "[t]ransfer" identical to the definitions in the prior section, HRS § 87A-35, are included.)]

. . . .

(c) The State, . . . shall pay to the fund:

. . . .

> (2) For retired employees based on the self plan with at least fifteen but fewer than twenty-five years of service, a monthly contribution equal to seventy-five per cent of the base medicare or non-medicare monthly contribution set forth under section 87A-33(b);

. . . .

The State claims that the 75% employer contribution in HRS § 87A-36(c)(2), for 15 to 25 years of service, applies to Slaton.

something must -- and I'll incorporate a concept that has been used but not defined -- that something must vest. Potential benefits have not accrued until they somehow vest in some fashion. And this record is absent any evidence or legal showing that when [Slaton] left government employment in 1978 to enter private practice for 27 years, that there was no criteria that was satisfied so that any retirement rights had vested or accrued to [Slaton] as of that November 12, 1978 separation from employment date, and so, therefore, all of the principles that restrict government from diminishing or impairing [Slaton]'s retirement rights were not triggered as of the November 12, 1978 separation from employment by [Slaton].

So the 2001 enactment of Chapter 87A, which replaced Chapter 87, Chapter 87 being on the books at the time [Slaton] first joined the attorney general's office -- excuse me -- University of Hawaii's legal office on September 1, 1975, that Chapter 87 was repealed and replaced by Chapter 87A in 2001. At that time, in 2001, [Slaton] was not yet back to government service, but returned to government service on or about January or February 2006. And so, therefore, the record indicates that [Slaton] was re-enrolled into the retirement system on February 1, 2006, and the February 1, 2006 date brought a different contribution level of the employer. Instead of 100 percent that was on the books in 1975, when [Slaton] rejoined government service in 2006, the applicable contribution by the employer was reduced to 75 percent or some percent lower than 100 percent. And that difference in employer contribution the Court now understands is the reason why this action was filed, as [Slaton] was seeking 100 percent contributions that were applicable in 1975 but had not yet accrued because the separation of employment did not satisfy the criteria necessary to qualify [Slaton] for retirement benefits.

Now, there are a couple of issues the Court wishes to quiet in its decision. First, there are a number of very interesting quotation of language by our supreme court in the *Dannenberg* case and the *Everson* case, E-V-E-R-S-O-N, *Everson*, but those cases did not involve noncontinuous government employees in the retirement system, so that issue of how noncontinuous employees were to be treated was never specifically raised. In all of the interesting language from *Dannenberg* regarding when do retirement benefits accrue, and they accrue upon enrollment in the retirement system, were all in the context of a continuous government employee.

8

So what we have in the case at bar is a noncontinuous government employee and how that employee's enrollment and years of credited service affect his right to retirement benefits. And the *Dannenberg* court in particular was astute to note that its decision in the *Dannenberg* case was not applicable to noncontinuous employees' circumstances. So this court does not necessarily rely upon the principles espoused in *Dannenberg* until a noncontinuous employee is vested with certain employee benefits, and only upon vesting do the rights accrue and cannot be impaired or diminished by a legislative act or government action. So the Court views its ruling in this case as not being inconsistent with the principles espoused in *Dannenberg* or *Everson*.

The final point the Court wished to make is relating to the question of impairment of contracts. And the Court concludes that the facts in this case do not indicate an impairment of a contract because there was no contract between [Slaton] and the [State] for the [State] to provide 100 percent contributions by the employer. That certainly was a potential at the time [Slaton] entered government service in 1975 for the first time, however, as the Court indicated, retirement benefits had not yet vested and, therefore, they never accrued at the 100 percent employer contribution level, and therefore there was no such contract between [Slaton] and the [State]. So there was no contract to impair when the legislature enacted Chapter 87A in 2001, so the Court also does not find the impairment of contract theory as a basis to award remedies to [Slaton].

So, in short, this court finds and concludes that the [State] w[as] within [its] rights to enforce Chapter 87A as it was enacted in 2001, and nothing in the [State's] administration of the [Appellants]' retirement benefits violated any provision of law or our constitution.

So for these and any other good cause shown in the record, the Court will respectfully deny the [Appellants]' motion for partial summary judgment and grant the [State's] cross motion for summary judgment.

The May 21, 2020 MPSJ Orders filed after the hearing, concluded that the State "violated no constitution, statute, regulation or other law by applying HRS §[]87A-36 to determine the part of retiree health care plan contributions the government was required to make for [Appellants]"; and "[Appellants] obtained no right to full retiree health care contributions from the government under repealed HRS Chapter 87 which [the State's] application of

9

HRS §[]87A-36 could have diminished, because . . . Slaton did not retire when he left government service in 1978."

On June 25, 2020, the Circuit Court entered Final Judgment on Count I, following the parties' June 19, 2020 stipulation to the partial dismissal without prejudice of Counts II, III, and IV.  Appellants timely appealed.

## II.  STANDARDS OF REVIEW

**Summary Judgment:**  "On appeal, the grant or denial of summary judgment is reviewed *de novo*."  Dannenberg, 139 Hawaiʻi at 49, 383 P.3d at 1187 (citation omitted).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law."  Flores v. Logan, 151 Hawaiʻi 357, 367, 513 P.3d 423, 433 (2022) (cleaned up).

**Constitutional Law:**  "Issues of constitutional interpretation present questions of law that are reviewed *de novo*."  Dannenberg, 139 Hawaiʻi at 50, 383 P.3d at 1188 (citation omitted).

**Statutory Construction:**  "Statutory interpretation is a question of law reviewable de novo."  Barker v. Young, 153 Hawaiʻi 144, 148, 528 P.3d 217, 221 (2023) (citation omitted).  Interpretation of a statute is governed by the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness

> or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Id. (citation omitted).

### III. DISCUSSION

Slaton advances two principal arguments for his contention on appeal that his earlier date of hire controls the employer contribution in this case:  (1) a constitutional argument based on the non-impairment clause of Article 16, section 2 of the Hawaiʻi Constitution protecting "accrued" benefits arising from membership in a retirement system, that "the original date of hire determines when benefits accrue," and Slaton's 100% employer contribution benefit accrued in 1975; and (2) a statutory interpretation argument that HRS § 87A-33(a)(5), applicable to employees hired before July 1996, is unambiguous and should be applied to Slaton, rather than HRS § 87A-36, applicable to employees hired after July 2001.  We address both arguments below.

### A. The Hawaiʻi non-impairment clause cases

The non-impairment clause in Article 16, section 2 of the Hawaiʻi Constitution mandates that "accrued benefits" from "[m]embership in any employees' retirement system" of state or local government "shall not be diminished or impaired."  Haw. Const. Art. XVI, § 2.  The following cases inform our analysis of how to apply the non-impairment clause in this case.

#### Chun (1980)

In Chun v. Emps.' Ret. Sys., 61 Haw. 596, 596-97, 607 P.2d 415, 416-17 (1980), the Hawaiʻi Supreme Court upheld the

11

enforcement of a statutory ERS application deadline in HRS § 88-73(1), of "not less than thirty days" prior to the designated retirement date, where the employee died nine days after filing his retirement application, in a lawsuit brought by the beneficiary against the ERS, claiming certain retirement benefits were due.  The beneficiary argued, inter alia, that her claim should be "scrutinized under principles of contract law" given the "contractual relationship" between an employee and ERS under language in Article 16, section 2 of the Hawaiʻi Constitution.  Id. at 605, 607 P.2d at 421.  This case was the Hawaiʻi Supreme Court's first occasion to interpret the non-impairment clause that was the basis of the beneficiary's argument.  The court noted, "[t]his court has never been called upon to examine or construe this particular provision of the Hawaii Constitution."  Id.  The Chun court quoted the following passage from the Committee of the Whole's Report (**1950 Committee of the Whole Report**) from the 1950 Constitutional Convention, explaining that the constitutional provision would limit the legislature from reducing "benefits attributable to past services" that were "already accrued[,]" but not limit the legislature from reducing benefits for the "future services" of those already in the system:

> It should be noted that the above provision would not limit the legislature in effecting a reduction in the benefits of a retirement system provided the reduction did not apply to benefits already accrued.  In other words, the legislature could reduce benefits as to (1) new entrants into a retirement system, or (2) as to persons already in the system in so far as their future services were concerned. It could not, however, reduce the benefits attributable to past services.  Further, the section would not limit the legislature in making general changes in a system, applicable to past members, so long as the changes did not necessarily reduce the benefits attributable to past services.

Id. at 605-06, 607 P.2d at 421 (citing Comm. of the Whole Report No. 18, Journal of the Const. Con. of 1950, p. 330).  Relying on the rationale of the 1950 Committee of the Whole Report above, the Chun court explained that the constitutional provision protected an employee "from a reduction in accrued benefits[,]" but the extent of the benefits and conditions for their receipt were governed by statute:

> [W]e conclude that the provision was meant to protect an employee from a reduction in accrued benefits.  However, the extent of such benefits as well as the conditions under which an employee should receive benefits, are governed by applicable statutory provisions, among which is the condition expressed in HRS § 88-73(1).

Id. at 606, 607 P.2d at 421 (emphasis added).

### **Kahoʻohanohano (2007)**

In Kahoʻohanohano v. State, the supreme court held, inter alia, that a statutory amendment that did not allow the ERS to retain one hundred percent of its excess earnings in certain years (Act 100) violated Article 16, section 2 of the Hawaiʻi Constitution.  114 Hawaiʻi 302, 310, 162 P.3d 696, 704 (2007).  The Kahoʻohanohano court explained that the intent of the framers of Article 16, section 2 at the proceedings of the 1950 Constitutional Convention of Hawaiʻi when the delegates added the word "accrued" before "benefits[,]" was "*to preserve the accrued benefits but still leave the legislature free as to the future*."  Id. at 343, 162 P.3d at 737.  The supreme court relied on the same language from the 1950 Committee of the Whole Report, quoted supra in Chun, that benefits "*attributable to past services*" that were "*already accrued*" could not be reduced, but the legislature could reduce benefits for "*future services*" "*as to persons already in the system*."  Id. at 344, 162 P.3d at 738 (citing Comm. of the Whole Report No. 18, Journal of the Const. Conv. of 1950, Vol. 1, at 330).

13

**Everson** (2010)

In Everson, retired public employees challenged whether EUTF health benefit plans available to them were constitutionally protected under the non-impairment clause, and raised a second issue not pertinent here, regarding whether HRS Chapter 87A required the EUTF to provide retirees with the same or similar health benefit plans provided to active employees. 122 Hawai'i at 404, 228 P.3d at 284. The supreme court rejected the State's arguments that the non-impairment clause did not apply because retiree health benefits did not arise from ERS membership; and because health benefits were not "accrued benefits" like financial benefits such as pensions, which could accumulate or accrue. Id. at 408, 228 P.3d at 288.

Construing the word "system" to mean the ERS, the Everson court noted that membership in the ERS is "mandatory" for all public employees who "enter or reenter" state or county service, "at the time of their entry or reentry." Id. at 415, 228 P.3d at 295 (citing HRS §§ 88-21, 88-42). Because a retired public employee's eligibility for health benefits under the EUTF in HRS Chapter 87A was conditioned on "being a retired member of the [ERS,]" id. at 417, 228 P.3d at 297 (internal citations omitted), the Everson court held that the health benefits included in the EUTF's "health benefits plan for retirees constitute an accrued benefit arising from a person's membership in an [ERS]." Id. at 407, 228 P.3d at 287 (capitalization altered). Citing the framers' intent in the 1950 Committee of the Whole Report set forth supra, the Everson court held that "health benefits for retired state and county employees constitute 'accrued benefits' pursuant to article XVI, section 2 of the Hawai'i Constitution." Id. at 419, 228 P.3d at 299.

14

As noted in the subsequent Dannenberg case, 139 Hawaiʻi at 52, 383 P.3d at 1190, the Everson court "declined to specifically address when retirement health benefits are accrued and what retiree health benefits must be deemed as accrued benefits."  The Everson court also expressly declined to address whether the employer contribution at issue in the present case was similarly protected by the non-impairment clause, stating that "whether the state or county government's contribution to the EUTF is protected by Hawaii's non-impairment clause is not the issue in this case."  122 Hawaiʻi at 418, 228 P.3d at 298.

**Dannenberg** **(2016)**

Dannenberg involved a class action lawsuit by retired state employees alleging that the State impaired accrued retirement health benefits by not providing retirees with a health benefits package that was substantially equal to that of active employees.  139 Hawaiʻi at 44, 56, 383 P.3d at 1182, 1194.  The Dannenberg court concluded that there was a genuine issue of material fact as to whether the retirement health benefits the appellants received, or would be eligible to receive under the EUTF, were the same or substantially the same as the health benefits that active retirees received under the Public Employees Health Fund (**PEHF** or **Health Fund**).[8]  Id. at 59, 383 P.3d at 1197.

The Dannenberg court addressed when retirement health benefits are accrued, and how to determine whether such benefits had accrued, stating:  "We therefore hold that benefits arising from membership in a Hawaiʻi ERS, including retiree health benefits, accrue upon an employee's enrollment in the ERS,

_____

[8]     As discussed infra, the PEHF under HRS Chapter 87, which was repealed in 2001, was the predecessor version of the EUTF under HRS Chapter 87A.

15

subject to any conditions precedent in place at the time of enrollment that must be satisfied before receiving the benefits." Id. at 53, 383 P.3d at 1191. The court explained the reasoning for this holding by drawing a distinction between *entitlement* to "accrued benefits," and the *receipt* of benefits, as follows:

> [I]n order to determine whether constitutionally protected benefits have been diminished or impaired, there must be a comparison between the "accrued benefits" that an employee is entitled to and the benefits that the employee has received. In Everson, the supreme court explained that the [n]on-[i]mpairment [c]lause "clearly and unambiguously" provides that "accrued benefits" arise from a State or county employee's membership in an ERS. 122 Hawaiʻi at 415, 228 P.3d at 295. The court observed that this membership is mandatory for all such employees upon their entry or re-entry into the service of the State or a county. Id. (citing 2 Proceedings of the Constitutional Convention of Hawaiʻi of 1950, at 495; HRS § 88-42 (Supp. 2008)). It is with this entry into service, and this mandatory membership in an ERS, that an employee becomes eligible to receive the benefits arising from ERS membership, provided that the employee satisfies the condition(s) precedent to receive them.

Id. at 52, 383 P.3d at 1190 (emphases added).

The Dannenberg court also expressly "decline[d] to address the effects of re-entry into service, and re-enrollment in the ERS, on a Hawaiʻi employee's 'accrued benefits,' as those issues ha[d] not been argued in th[at] case." Id. at 53 n.16, 383 P.3d at 1191 n.16. These issues are presented in this case.

Before we turn to whether Slaton "accrued" the benefit at issue here, we first answer what was left unaddressed in Everson, and hold that the employer contributions to the EUTF for retiree health insurance premiums under HRS Chapter 87A and its predecessor version discussed infra, are benefits for retired employees for purposes of Article 16, section 2 of the Hawaiʻi Constitution. The EUTF in HRS Chapter 87A states in its title that it is a "Health Benefits Trust Fund." HRS § 87A

16

(emphasis added). The purpose of the EUTF is "to provide the employee-beneficiaries and dependent-beneficiaries with health and other benefit plans." HRS § 87A-31 (1993 & 2006 Supp.) (emphasis added). The EUTF is funded, in part, by contributions under HRS § 87A-30, which include the 100% and partial employer contributions that are the subject of the dispute in this case. Certainly, from the viewpoint of the employee, the employer contribution is part of the benefits under HRS Chapter 87A. As evidenced by the legislative history for the employer contribution statutes that we discuss infra, the legislature also viewed the employer contribution as a benefit. See Conf. Comm. Rep. No. 119-04, in 2004 House Journal, at 2055, cited infra. While the employer contribution is a benefit for the public employee, the non-impairment clause only applies to "accrued benefits." Haw. Const. art. XVI, § 2 (emphasis added). We address below whether Slaton "accrued" the 100% employer contribution benefit, subject to any conditions precedent for receipt of that benefit to trigger the protection of the non-impairment clause. See Dannenberg, 139 Hawai'i at 53, 383 P.3d at 1191.

**B. The non-impairment clause applicable to accrued benefits did not apply to Slaton because Slaton had no benefit from his 1975 to 1978 employment subject to the non-impairment clause.**

Slaton argues that under Everson, 122 Hawai'i 402, 228 P.3d 282, and Dannenberg, 139 Hawai'i 39, 383 P.3d 1177, he was "entitled to benefits that are attributed to, and accrued to his membership in the system that began on September 1, 1975, and continued for a total of 15 years"; and that "the 100% employer contribution accrue[d] upon Slaton's membership in 1975, subject to the condition precedent of years of service."

The State argues that "applying [HRS] Section 87A-36 to Slaton's 1975-78 employment would not violate the [n]on-impairment [c]lause" because Everson ruled that "accrued" benefits in the non-impairment clause meant that "past benefits" could not be impaired; Slaton did not "gain[] any retirement health benefits based on his 1975-78 employment" "under the 1975 version of Chapter 87"; and thus, there were "no 'past benefits' that can be diminished." (Bolding omitted.)

In Dannenberg, the supreme court held that retiree health benefits arising from ERS membership accrue upon ERS enrollment, subject to any conditions precedent in place at the time of enrollment that must be satisfied before receiving the benefits. 139 Hawaiʻi at 42, 53, 383 P.3d at 1180, 1191. A condition precedent must be fulfilled before the obligation to which it is connected ripens. Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 246, 921 P.2d 146, 166 (1996) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." (citing Restatement (Second) of Contracts § 224 (1981)). In other words, if the condition precedent "does not occur and is not excused, the promised performance need not be rendered." Condition Precedent, Black's Law Dictionary 369 (12th ed. 2024). When determining whether a certain benefit was due, the supreme court in Chun explained that "the extent of such benefits as well as the conditions under which an employee should receive benefits, are governed by applicable statutory provisions[.]" 61 Haw. at 606, 607 P.2d at 421. In this case, the extent of the employer contribution benefit, whether 100% or partial, as well as whether Slaton satisfied the conditions precedent to receive the benefit are both disputed.

**1. The law at the time of Slaton's 1975 enrollment and throughout his 1975 to 1978 employment, HRS § 87-6, provided the 100% employer contribution benefit to an employee who was retired.**

The conditions precedent for Slaton to receive the 100% employer contribution benefit are the statutory qualifications in place at the time of Slaton's enrollment in the ERS in 1975.  See id.; Dannenberg, 139 Hawaiʻi at 53, 383 P.3d at 1191.  Here, the parties do not dispute that Slaton was an ERS member during his public employment periods and that he retired as an ERS member.  When Slaton became a public employee and enrolled in the ERS in 1975, the pertinent employer contribution statute in effect at that time was HRS § 87-6,[9] which contained no years of service or date of hire requirements.  HRS § 87-6 provided that only a *retired* employee-beneficiary received the 100% employer contribution.  The pertinent retirement law in effect at the time of Slaton's 1975 enrollment and his 1975 to 1978 employment was set forth in HRS §§ 88-63(4) and 88-64(1).  These retirement statutes required that an ERS member have five years of service under HRS § 88-63(4), and be at least 55 years of age under HRS § 88-64(1) for retirement eligibility.[10]

---

[9]    HRS § 87-6 (1968 & 1975 Supp.) (repealed), entitled "Contributions by an employee-beneficiary," provided:

> . . . .
>
> Notwithstanding any other law to the contrary, . . . an employee-beneficiary who is a retired employee, . . . shall not be required to make any contribution to the fund. The monthly contribution of . . . an employee-beneficiary who is a retired employee, . . . shall be financed by the State through the department of budget and finance for each of their respective employee-beneficiaries.

(Emphasis added.)

[10]    HRS § 88-63(4) (1968 & 1975 Supp.), entitled "Service retirement," provided:  "Notwithstanding any other provision of this section,

## 2. Slaton did not satisfy the applicable conditions precedent at the time of his 1975 enrollment as set forth in HRS § 87-6, that he be "retired" to receive the 100% employer contribution.

The 100% employer contribution benefit accrued upon Slaton's 1975 enrollment in ERS, subject to Slaton satisfying the conditions precedent set forth in the statutory requirement "in place at the time of enrollment" for Slaton to receive the benefit. See Dannenberg, 139 Hawaiʻi at 53, 383 P.3d at 1191; Chun, 61 Haw. at 606, 607 P.2d at 421. It is undisputed that Slaton did not satisfy the statutory qualifications in HRS § 87-6 that were in place at the time of his 1975 ERS enrollment that he be "retired" to qualify for 100% employer contribution during his 1975 to 1978 employment. See Chun, 61 Haw. at 606, 607 P.2d at 421. When Slaton enrolled in ERS in 1975, a state or county employee had to be 55 years old and have five years of creditable service to be entitled to retirement benefits. HRS § 88-63 (1968 as amended by 1969 Haw. Sess. Laws Act 110, § 1 at 107; see § 3 at 129). Slaton was 29 years old and had three years of service when he left state employment in 1978. He had not satisfied the conditions precedent to not having to contribute to the Health Fund as a retiree. When he terminated his state employment in 1978, the law that applied to a former ERS member returning to service after being out of service for four years or more provided that "he shall become a member in the same manner and under the same conditions as anyone first entering service . . . . In order to be eligible for any benefit, he must fulfill the membership service requirements for

_____

a member must have five years of creditable service to be eligible for service retirement." HRS § 88-64(1) (1968), entitled "Allowance on service retirement," provided for a "retirement allowance" "[i]f the member has attained age fifty-five[.]"

such benefit through membership service after again becoming a member in addition to meeting any other eligibility requirement established for such benefit."  1969 Haw. Sess. Laws Act 110, § 1 at 106-07.  Slaton did not satisfy the condition precedent in HRS § 87-6 that he be "retired" to receive the 100% employer contribution benefit during his 1975 to 1978 employment.  See Dannenberg, 139 Hawaiʻi at 53, 383 P.3d at 1191.

> **3. Slaton had no 100% employer contribution benefit attributable to his past service in 1975 to 1978 subject to the non-impairment clause, when the employer contribution law subsequently changed with respect to his future service.**

In all of the non-impairment clause cases set forth supra, the Hawaiʻi Supreme Court drew a distinction between "benefits attributable to *past services*," which could not be reduced, and benefits for "*future services*," which could be reduced, stating:  "the legislature may also reduce benefits as to persons already in the system in so far as their *future services* were concerned, but it could not, however, reduce the benefits attributable to *past services*."  Dannenberg, 139 Hawaiʻi at 51, 383 P.3d at 1189 (quoting Everson, 122 Hawaiʻi at 416, 228 P.3d at 296); see Chun, 61 Haw. at 605, 607 P.2d at 421; Kahoʻohanohano, 114 Hawaiʻi at 344, 162 P.3d at 738.  The latest case, Dannenberg, again cited the framers' intent from the 1950 Committee of the Whole Report, and underscored the need to provide the legislature with "flexibility to make future changes" to the ERS to ensure its viability, including the reduction of benefits for future services for those already in the system, as follows:

> Article XVI, section 2 was intended in part to provide the legislature with flexibility to make future changes to the retirement system, which included changing the benefits that are provided to members of an ERS, as

> long as the changes did not reduce an employee's benefits attributable to past services. . . .
>
> Instead, the word "accrued" was added before "benefits" to refer to a particular point in time in order to ensure that any future change to the benefits provided to a retired state or county employee would not diminish or impair those benefits that have already "accrued." As such, with regard to future changes, the legislature could reduce benefits as to (1) new entrants into a retirement system, or (2) as to persons already in the system in so far as their future services were concerned. *It could not, however, reduce the benefits attributable to past services*.

Dannenberg, 139 Hawaiʻi at 51-52, 383 P.3d at 1198-90 (emphases added) (cleaned up) (quoting Everson, 122 Hawaiʻi at 419, 228 P.3d at 299).

Here, when Slaton first enrolled in the ERS in 1975, he had no past service subject to the non-impairment clause. He did not meet the condition precedent to receive the 100% employer contribution benefit under HRS § 87-6, the then-existing statute, during his 1975 to 1978 employment. Thus, when he left government service in 1978, Slaton was a "person[] already in the [(ERS)] system," who had attained no benefit "attributable to [his] past services" in 1975 to 1978, subject to the non-impairment clause. See id. The framers of the non-impairment clause at the 1950 Constitutional Convention intended the legislature have the ability to "reduce benefits" "as to persons already in the system" with regard to their "future services," see id., and the legislature did so here, by changing the law for the 100% employer contribution benefit after Slaton left government service in 1978 and before he returned to public employment for his future service in 2006 to 2015. Because Slaton had no 100% employer contribution benefit "*attributable to past services*" in 1975 to 1978, there was no "accrued" benefit subject to the non-impairment clause. See id. Thus,

22

the change in the employer contribution law with respect to Slaton's "future services" in 2006 to 2015 did not violate the non-impairment clause.  See id.

> **C. Under the 2006 employer contribution law applicable to his 2006 to 2015 employment set forth in HRS §§ 87A-33(a)(5), 87A-35, and 87A-36, Slaton did not qualify for the 100% employer contribution benefit.**

When Slaton returned to public employment on February 1, 2006, the 2001 legislature had repealed HRS Chapter 87, the PEHF, and replaced it with HRS Chapter 87A, the EUTF, to take effect in 2003.  2001 Haw. Sess. Laws Act 88, § 1 at 138. In 2004, the legislature added the "break in service" language (**break-in-service**) in the Tier 2 statute, HRS § 87A-35(a), which referred to the Tier 1 employees hired before July 1, 1996, under HRS §§ 87A-33(a)(5), as follows:

> SECTION 1.  Section 87A-35, [HRS], is amended by amending subsection (a) to read as follows:
>
> "(a) This section shall apply to state and county contributions to the fund for employees who were hired after June 30, 1996, but before July 1, 2001, and who retire with fewer than twenty-five years of credited service, excluding sick leave; provided that this section shall not apply to[÷] the following employees, for whom state and county contributions shall be made as provided by section 87A-33:
>
> > (1)   An employee hired prior to July 1, 1996, who transfers employment after June 30, 1996[÷ and], and who cumulatively accrues at least ten years of credited service; and
> >
> > (2)   An employee hired prior to July 1, 1996, who has at least ten years of credited service [and who has had] prior to a break in service.
>
> For the purposes of this section[, "transfer"]:
>
> "Break in service" means to leave state or county employment for more than ninety calendar days before returning to state or county employment.
>
> "Transfer" means to leave state or county employment and return to state or county employment within ninety calendar days."

2004 Haw. Sess. Laws Act 184, § 1 at 887 (underscoring and strikeouts in original) (footnote omitted).[11]  Thus, the version of the employer contribution law applicable to Slaton's 2006 to 2015 term of employment, HRS §§ 87A-33(a)(5), 87A-35, and 87A-36, contained the break-in-service provision that was added in 2004.

> 1.  **HRS § 87A-33(a)(5) and its related break-in-service text in HRS § 87A-35(a)(2), which provide for 100% employer contribution based on Slaton's 1975 date of hire, do not apply because Slaton had a break in the ten-year service requirement.**

Slaton contends that the EUTF erred in not following "the clear dictates of the unambiguous language of [HRS] § 87A-33(a)," based on his earlier 1975 date of hire.  We do not agree that the employer contribution law at issue here is

---

[11]     Act 184 also made a similar amendment to the Tier 3 statute, HRS § 87A-36, to provide for identical break-in-service language that referenced the Tier 2 employees under HRS § 87A-35, as follows:

> SECTION 2. Section 87 A-36, [HRS], is amended by amending subsection (a) to read as follows:
>
> "(a) This section shall apply to state and county contributions to the fund for employees hired after June 30, 2001, and who retired, except that this section shall not apply to[÷] the following employees, for whom state and county contributions shall be made as provided by section 87A-35:
>
> (1) An employee hired after June 30, 1996, and prior to July 1, 2001, who transfers employment after June 30, 2001[÷], and who cumulatively accrues at least ten years of credited service; and
>
> (2) An employee hired after June 30, 1996, and prior to July 1, 2001, who has at least ten years of credited service [and who has had] prior to a break in service.
>
> [(Definitions for "break in service" and "transfer" provided.)]

2004 Haw. Sess. Laws Act 184, § 2 at 887-88 (underscoring and strikeouts in original).

unambiguous when applied to Slaton. Because of his two periods of public employment, Slaton had two different dates of hire, and determining which employer contribution statute applies to him is not straightforward and unambiguous. This is evidenced by the competing arguments made by the parties here, that different statutory tiers apply to Slaton based on the two different dates of hire. Slaton argues that the earlier 1975 date of hire controls, HRS § 87A-33(a)(5) applies to him, and that HRS § 87A-33(a)(5) has no break-in-service language. The State argues that the 2006 date of hire under HRS § 87A-36 applies and that Slaton had a break-in-service prior to acquiring the ten years of continuous service necessary to qualify for 100% employer contribution under HRS 87A-33(a)(5).

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1-16 (2009). In pari materia is "a doctrine that construes ambiguous laws on the same subject matter together. We do so because what is clear in one statute may be called in aid to explain what is doubtful in another." Alpha, Inc. v. Bd. of Water Supply, 154 Hawaiʻi 486, 494, 555 P.3d 173, 181 (2024) (cleaned up). When applying the in pari materia doctrine, "we are mindful that 'one provision of a comprehensive statute should be read in the context of the other provisions of that statute and in the light of the general legislative scheme.'" Casumpang v. ILWU Local 142, 108 Hawaiʻi 411, 421, 121 P.3d 391, 401 (2005) (cleaned up).

The pertinent employer contribution statutes in HRS Chapter 87A at issue here -- HRS §§ 87A-33, -35, and -36 -- set forth three tiers of retired employees based on date of hire, to prescribe whether the employer contribution is full or partial.

We construe these related statutes together. See id.; Alpha, 154 Hawai‘i at 494, 555 P.3d at 181. HRS § 87A-33(a)(5) (Tier 1) pertains to employees hired before July 1, 1996; HRS § 87A-35 (Tier 2) pertains to employees hired from July 1, 1996 to July 1, 2001; and HRS § 87A-36 (Tier 3) pertains to employees hired after July 1, 2001. With regard to retirees with non-continuous employment, these three sections cross-reference each other, setting forth qualifications for non-continuous service and definitions for "[t]ransfer" and "[b]reak in service." The Tier 2 statute, HRS § 87A-35, contains a cross-reference and text relevant to Tier 1 employees under HRS § 87A-33(a)(5), to specify under what conditions a Tier 1 employee with a "[b]reak in service" would qualify for the 100% employer contribution under Tier 1, HRS § 87A-33(a)(5), as follows:

> (a) This section shall apply to state and county contributions to the fund for employees who were hired after June 30, 1996, but before July 1, 2001, and who retire with fewer than twenty-five years of credited service, . . .; provided that <u>this section shall not apply to the following employees, for whom state and county contributions shall be made as provided by section 87A-33</u>:
>
> . . . .
>
> (2)  An employee hired prior to July 1, 1996, who has at least ten years of credited service prior to a break in service.

HRS § 87A-35(a)(2) (1993 & 2006 Supp.) (emphasis added).[12]

If read in isolation, HRS § 87A-33(a)(5) appears to apply to Slaton, because it applies to an employee who was hired before July 1, 1996, retired after June 30, 1984, with ten-plus years of service. Slaton was first hired in 1975, retired after 1984, and had over ten years of service combining his 1975 to

---

[12]   The Tier 3 statute, HRS § 87A-36, reflects a similar pattern, with a cross-reference and text relevant to Tier 2 employees under HRS § 87A-35, to specify when a Tier 2 employee under HRS § 87A-35 with a "[t]ransfer" or "[b]reak in service" would qualify for benefits under Tier 2, HRS § 87A-35.

1978 and 2006 to 2015 public employment periods.  Because the adjoining related statute, HRS § 87A-35(a)(2), contains text expressly referencing and related to HRS § 87A-33(a)(5), these statutes must be considered together.  See Casumpang, 108 Hawaiʻi at 421, 121 P.3d at 401; Alpha, 154 Hawaiʻi at 494, 555 P.3d at 181.  Read in pari materia, the ten-year service requirement in HRS § 87A-33(a)(5), means ten years "prior to a break in service" as explained in HRS § 87A-35(a)(2).  See HRS § 1-16.

"[The] rules of statutory construction require rejection of an interpretation that renders any part of the statutory language a nullity."  Jijun Yin v. Aguiar, 146 Hawaiʻi 254, 265, 463 P.3d 911, 922 (2020) (citation omitted).  "[W]hen construing a statute, courts are bound to give effect to all parts of a statute, and no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute."  Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 18, 346 P.3d 70, 87 (2015) (cleaned up).  Reading HRS § 87A-33(a)(5) in isolation, as Slaton urges, renders the text related to HRS § 87A-33 that appears in HRS § 87A-35 a nullity or superfluous.  See id.  Reading the statutes in pari materia avoids this result.

Slaton argues that "the 'Notwithstanding [any law to the contrary]' language in [HRS] § 87A-33(a)(5) is controlling" over "any other law."  This argument is without merit.  "We have repeatedly recognized that one provision of a comprehensive statute should be read in context of other provisions of that statute and in light of the general legislative scheme.  Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole."  Kam v. Noh, 70 Haw. 321, 326, 770 P.2d 414,

417-18 (1989) (citations omitted). The prefatory "[n]otwithstanding any law to the contrary" language in HRS § 87A-33(a)(5) must be construed together with HRS §§ 87A-35 and 87A-36 -- both of which are not "to the contrary" of HRS § 87A-33(a)(5). See id.; HRS § 1-16.

We conclude that, for purposes of determining Slaton's date of hire in this case, HRS § 87A-33(a)(5) (Tier 1) based on Slaton's 1975 date of hire does not apply because Slaton had a break in the ten-year service requirement under HRS § 87A-33(a)(5) and its related text in HRS 87A-35(a)(2).

>    **2.    HRS § 87A-36, which provides for partial employer contribution based on Slaton's 2006 date of hire and length of service, applies in this case.**

HRS § 87A-36, providing for partial contribution for retired employees hired after June 30, 2001, with 15 to 25 years of service, applies to Slaton based on his 2006 date of hire.

Our conclusion that HRS § 87A-36 applies to Slaton is supported by the legislative history for the 2004 amendments that added the break-in-service language at issue in this case. See Barker, 153 Hawaiʻi at 148, 528 P.3d at 221. In 2004, the legislature specifically considered the lack of clarity in the 100% employer contribution law for Tier 1 retired employees with a pre-July 1, 1996 date of hire, who had a break in their ten-year service requirement, like Slaton.[13] The legislature

---

[13]    The legislature initially intended to provide the same retirement health benefit to a Tier 1 employee who cumulatively accrued ten years of service, with or without a break-in-service, as follows:

>    Your Committee believes that an individual hired before July 1, 1996, who transfers employment after July 1, 1996, and cumulatively accrues ten years of credited service or who accrues ten years of credited service before a break in service, is entitled to receive the same health benefits upon retirement as an individual who was hired before July 1, 1996, thereafter accrued ten years of

28

ultimately rejected language that would include employees like Slaton, who had "a break in service and who cumulatively accrue[d] at least ten years[,]" under the 100% employer contribution statute, HRS § 87A-33(a)(5).  <u>See</u> Conf. Comm. Rep. No. 119-04, in 2004 House Journal, at 2055.  While the bill initially provided for 100% employer contribution for Tier 1 retired employees with a break in the ten-year service requirement, this language ended up being deleted due to an attorney general opinion "reflecting disapproval of the ramifications" of including these employees, as follows:

> The purpose of this measure is to clarify the health benefits provided upon retirement to public employees who transferred or experienced a break in service before subsequently returning to state or county employment.
>
> Specifically, this measure:
>
> (1)  Provides that the State or counties will pay the full base monthly contribution amount for health benefits plans for an employee hired prior to July 1, 1996, who:
>
> (a) Transfers employment after June 30, 1996, and accrues at least ten years of credited service;
>
> (b) Has at least ten years of credited service prior to a break in service; or
>
> (c) Has had a break in service and who accrues at least ten years of credited service; and
>
> (2)  Provides that the State or counties shall pay a monthly contribution amount for health benefits plans, in accordance with section 87A-35, [HRS], for an employee hired subsequent to June 30, 1996, and prior to July 1, 2001, who:
>
> (a) Transfers employment after June 30, 2001, and accrues at least ten years of credited service; and

---

credited service, and left public service without ever returning.

S. Stand. Comm. Rep. No. 2686, in 2004 Senate Journal, at 1355-56; <u>see</u> H. Stand. Comm. Rep. No. 1250-04, in 2004 House Journal, at 1896 (adding a provision that a Tier 1 employee with cumulative ten years of service would qualify for the same retirement as those without a break-in-service).

> (b) Has at least ten years of credited service prior to a break in service.

> Your Committee on Conference finds that an employee, initially hired prior to July 1, 1996, who leaves and then later returns to public service, may be treated as a new employee for purposes of determining the level of health benefits to be provided upon retirement under the [EUTF]. Although such an employee may have qualified for health benefits upon retirement that an employee who was hired prior to July 1, 1996, who has not experience [sic] a break in service, is entitled to receive, it is unclear under the current law as to how such an individual will be treated. Therefore, further clarification of the law is necessary.

> Under the current law, public employees hired prior to July 1, 1996, who accrue at least ten years of credited service, are entitled to health coverage upon retirement funded entirely by the State or appropriate county. Therefore, your Committee on Conference believes that employees satisfying the aforementioned criteria, who also either transfer employment or experience a break in service, should be entitled to receive the same health benefits upon retirement as an individual who was hired before July 1, 1996, and leaves public service without returning with at least ten years of credited service. Additionally, so as not to diminish any benefits currently provided under the law, this measure ensures that public employees hired between June 30, 1996, and July 1, 2001, who transfer employment and accrue at least ten years of credited service or accrued at least ten years of credited service prior to experiencing a break in service are entitled to health coverage upon retirement which is partially funded by the State or county as provided in section 87A-35, HRS.

> Based upon an opinion rendered by the Department of the Attorney General reflecting disapproval of the ramifications of the provisions of this measure, your Committee on Conference has amended this measure by:

> (1) Deleting the language which required the State or counties to pay the full base monthly contribution amount for health benefits plans for an employee hired prior to July 1, 1996, who has had a break in service and who cumulatively accrues at least ten years of credited service. . . .

Conf. Stand. Comm. Rep. No. 119-04, in 2004 House Journal, at 2055 (emphases added). The legislative history set forth above reflects a clear intent to ultimately exclude employees with a break-in-service from the Tier 1 100% employer contribution

benefit.  We thus conclude that HRS § 87A-36, providing partial employer contribution, applies to this case based on Slaton's 2006 date of hire; and the Circuit Court's MPSJ Orders granting the State's MPSJ and denying Appellants' MPSJ, were correct. See Dannenberg, 139 Hawaiʻi at 49, 383 P.3d at 1187.

## IV.  CONCLUSION

For these reasons, we affirm the Circuit Court of the First Circuit's (1) June 25, 2020 "Final Judgment on Count I (Declaratory Relief)"; (2) May 21, 2020 "Order Granting Defendants' Motion for Partial Summary Judgment on Count I (Declaratory Relief) filed December 9, 2019"; and (3) May 21, 2020 "Order Denying Plaintiffs' Motion for Partial Summary Judgment on Count I (Declaratory Relief) filed March 1, 2019."

On the briefs:                      /s/ Keith K. Hiraoka
                                    Presiding Judge
Randolph R. Slaton,
for Plaintiffs-Appellants.          /s/ Clyde J. Wadsworth
                                    Associate Judge
Weiwei He,
for Defendants-Appellees.           /s/ Karen T. Nakasone
                                    Associate Judge